1840.

Meserole
v.
Mayor, &c. of
Brooklyn.

---

### G. H. & P. A. Meserole *vs.* The Mayor and Common Council of Brooklyn.

Under the general turnpike laws, the lands of an individual taken for the use of a turnpike road, are not the property of the turnpike company until the damages assessed in favor of the individual owner are actually paid ; even where payment has not been demanded, and there is no person living on the land who is entitled to receive such damages.

It seems, however, that in such a case the corporation is authorized to take possession of the land for the purposes of the road, and to retain possession until payment of the damages assessed are demanded. But if the payment is not then made, the right of the company to the possession of the land ceases.

Where only a part of the lands which are directed to be taken for the opening of a street in the city of Brooklyn have been included in the report of the commissioners of estimate and assessment, the confirmation of their report is irregular ; as there cannot be an absolute confirmation of the report of the commissioners, so as to vest any rights under the same, until the damages for all the lands taken for the proposed improvement

have been ascertained and settled, and properly assessed upon the owners of the lands to be benefitted by such improvement.

Under the act of April, 1835, authorizing the appointment of commissioners to lay out the streets, avenues and squares in the city of Brooklyn, the mayor and common council were not authorized to lay out and open any street or avenue in the new wards of that city, after that act took effect, until the same had been authorized by such commissioners.

The court of chancery is not authorized to interfere to correct an erroneous assessment, which has been duly confirmed, where the commiss'oners have merely erred in judgment as to the value of the contemplated improvement to the owner of the lands assessed; although the amount so assessed for the supposed benefit is more than the lands will be actually worth after the contemplated improvement has been made.

1840.

Meserole
v.
Mayor, &c. of
Brooklyn.

THIS was an appeal from a decision of the vice chancel- April 7. lor of the first circuit, refusing to dissolve an injunction. J. Meserole, the father of the complainants, who died in 1827, was at the time of his death seized in fee of a lot of land in the town, now city of Brooklyn, containing about 23 acres; and by his death the same descended to the complainants, who were then infants under the age of four years, subject to the right of dower of their mother therein. Shortly after the death of their father, the Wallabacht and Bedford Turnpike Company was incorporated, for the purpose of making a road from Sands-street, in the village of Brooklyn, to the village of Bedford; with all the rights and privileges, powers and immunities, which were given and granted by, and subject to all the conditions, provisions, restrictions and regulations contained in the general act of March 13th, 1807, relative to turnpike companies. (1 *R. L. of* 1813, *p.* 228.) In 1827, the road was laid out, about four rods in width and extending through the lands of the complainants, according to the directions of the statute on that subject. And the president and directors of the turnpike company being unable to agree with all the owners of the land required for their road, particularly with the complainants, who were infants, applied to one of the judges of the court of common pleas of Kings county to appoint appraisers; who were appointed accordingly, and proceeded to appraise the damages of the complainants and of the other owners of lands who could not

agree with the turnpike company, as directed by the statute. They made an inquisition, which was duly acknowledged and recorded in the office of the clerk of the county of Kings, in April, 1828; and in which inquisition the damages of the complainants, as the heirs of J. Meserole, for their lands thus taken for the turnpike road were appraised at $90. The turnpike company, shortly after the filing of the inquisition, proceeded to open their road through the land of the complainants, and the same has been ever since used as a public road. But as there was no person living on the said land who was authorized to receive the damages thus appraised, and the complainants were infants, the damages have never been paid by or lawfully demanded of the turnpike company.

In March, 1836, an application was made to the corporation of the city of Brooklyn, by Van Buren, the step-father of the complainants, and others, to lay out, open and continue Bedford road, (which was the name of the turnpike road, so laid out and opened by the Wallabacht and Bedford Turnpike Company,) to the width of 80 feet, commencing at its junction with the Jamaica Turnpike, and running thence in the present course of the Bedford road to Clinton avenue, &c. &c. Upon this application the common council determined and fixed the limit or district which was to be benefitted by the proposed improvements, and beyond which, the assessments therefor were not to extend; and caused notice of the application to be published in the manner required by the first section of the act of April 30th, 1833, relative to the village of Brooklyn; which act as to the streets, was made a part of the city charter. (*Laws of* 1834, *p.* 116, § 72.) And no remonstrance having been presented against the proposed improvement, the mayor and common council, by a resolution, determined to make the same. In pursuance of which, the first judge of the county appointed three commissioners of estimate and assessment, and Van Buren, who had married the mother of the complainants, was appointed by the said first judge their guardian ad litem, to protect their

interests in the proceedings, as required by the act of 1833. He assented in writing to accept the trust, and attended before the commissioners of estimate and assessment accordingly. The commissioners assuming that the turnpike was properly laid out through the lands of the complainants, and that only two small strips on each side of it were wanted for the proposed improvement, to extend it to the width of eighty feet, reported that two strips of land of the complainants, particularly described in the report, about seven feet in width on each side of the Bedford road, and about nine hundred and sixty-eight feet in length, were required for the purpose of making the improvement directed by the city corporation. And they estimated and assessed the damage to the owners of those two strips of land at $2168,76, and the benefit to them as the owners of the residue of their lands which were within the limits of the assessment district, at $139,31. This report was duly confirmed by the supreme court, in December, 1836, no objection having been made to the same by the guardian ad litem of the complainants.

The complainants subsequently filed their bill in this cause, by A. Meserole, their next friend, insisting that they were still the owners in fee of the land over which the Wallabacht and Bedford Turnpike was laid out, and that the commissioners of estimate and assessment should have included that land with the two strips on each side thereof, which were taken for the proposed improvement ; and should have allowed them the value thereof in damages, to be deducted from the benefits which they were to receive in consequence of the improvement. They also alleged in their bill, that the amount assessed as benefit to their lands lying within the limit of the assessment district, after deducting the sum allowed for damages, far exceeded the real value of those lands, even if the Bedford road was actually laid out as a public street of the width of eighty feet, as contemplated by the commissioners of estimate and assessment ; and that the corporation of the city of Brooklyn was proceeding by a distress warrant to collect the as-

1840.

Meserole
v.
Mayor, &c. of
Brooklyn.

sessment. The complainants therefore prayed that the proceedings of the mayor and common council in opening and extending the Bedford road, so far as the same was based upon the presumption that the road had been legally laid out through their lands, might be set aside and vacated, and declared void, so far as the same related to or in any way concerned their estate and interest ; that their lands might be decreed to be discharged from the assessment ; and that the defendants might be restrained by injunction from collecting such assessment, or proceeding further in the matter so far as related to the rights or interests of the complainants. The only disputed fact in the case was, as to the value of the complainants' lands which were assessed for benefit, beyond the amount of damages for the land taken. In the first answer of the defendants, which was sworn to by the mayor, he said they were ignorant whether the amount of the assessment, after deducting the damages, exceeded the value of the lands assessed, or what was the actual value of the same. But that Van Buren, the guardian ad litem, knew the amount of the assessment and did not object to it ; but on the contrary, deemed it for the benefit of the infants, that the report should be confirmed. And the defendants insisted that the report of the commissioners of estimate and assessment, and the confirmation thereof by the supreme court, were final and conclusive upon the parties, and could not be impeached or altered by the court of chancery. And they prayed the same benefit of that objection, as if they had pleaded the proceedings in the matter of the opening, laying out and continuing Bedford road. In their further answer, they in effect denied that the amount of the assessment for benefit was more than the value of the lands charged therewith ; stating that at the time of the assessment, according to their judgment and belief, the lands of the complainants, which were charged as benefited by the contemplated improvement, were worth about $250 for each lot of 2500 square feet ; and that although the value of real estate had depreciated subsequent to the assessment, the

defendants believed that at the time of the putting in of such further answer the lands assessed would still be worth about $200 a lot, if the improvements as contemplated were completed.

*J. A. Lott*, for the appellants. The bill itself is insufficient to authorize an injunction. It shows that the defendants had jurisdiction to lay out the road ; and having jurisdiction, they cannot be interfered with by the court of chancery, for irregularity, by injunction. The objection to the defendants' proceedings amounts only to irregularity. (*Laws of* 1827, *p.* 350. *Id.* 1833, *p.* 499. *Id.* 1834, *p.* 90, § 72, *&c.* 42, *&c.* *Id.* 1835, *p.* 124, § 3. *Coles* v. *Trustees of Williamsburgh*, 10 *Wendell*, 659. 1 *R. L.* 228.) If the acts of the corporation were *void*, for want of jurisdiction, the complainants have a perfect remedy at law for all damages or injury which they may sustain. The complainants have not only redress for damages in a suit at law, but they have also a perfect remedy at law by *certiorari*, to set aside the proceedings if void or irregular. The remedy being complete at law, and no fraud or corruption in the proceedings being alleged or proved, chancery has no jurisdiction. (*Champlin* v. *Mayor, &c. of New-York*, 3 *Paige's Rep.* 573, 576. *Patterson* v. *Corporation of New-York*, 1 *Id.* 114, 116. *Le Roy and others* v. *Mayor, &c. of New-York*, 4 *John. Ch. Rep.* 352. *Mooers* v. *Smedley and others*, 6 *Id.* 28. *Murray* v. *Graham*, 6 *Paige's Rep.* 622, 624.) If the bill is sufficient to warrant the injunction, all its equities are denied by the answer. The turnpike company were authorized to take the complainants' lands without a previous actual payment of the damages assessed. (*Jerome* v. *Ross*, 7 *John. Ch. Rep.* 315. *Wheelock* v. *Pratt*, 4 *Wendell*, 650. *Rogers* v. *McGee*, 20 *John. Rep.* 735. *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 *Wendell*, 9, 10, *&c.*) The act authorizing the appointment of commissioners to lay out streets, passed in 1835, did not interfere with or deprive the corporation of its jurisdiction. (*Laws of* 1835, *p.* 124,

§ 3, *p.* 136, § 1, 2, 7.) The defendants were therefore, on the answer, entitled to a dissolution of the injunction, and the vice chancellor's order denying the motion for a dissolution, and the order of affirmance by the chancellor, were erroneous.

*R. Bogardus,* for the respondents. The paying for private property taken for public purposes is a condition precedent. (*Const,* § 7.) So far as the act of 1813 is inconsistent with that, *it is void or repealed.* The heirs of Meserole were therefore never divested of their exclusive right to the property. If they were at all divested, it was of the use of the ground and not of the fee ; purchases under the turnpike act, by appraisal of damages, only obtain the right to pass over, &c. (1 *R. L. of* 1813, *p.* 225, § 1.) And when ceased to be used as a turnpike it reverts to the original owner. (12 *Wendell,* 371.) The road, 66 feet, belongs to the heirs of Meserole or to the turnpike company, and notwithstanding the proceedings, it remains the property of either such heirs or of the turnpike company. The proceedings of the commissioners, so far as it respects the land in question and the heirs of Meserole, are void ; the commissioners were ordered by the common council *to lay out and open* the Bedford road 80 feet wide. They could not adjudicate. They were only authorized to do as ordered. They were not authorized to lay out two strips. They acted in that and in assessing us as fronting on an 80 foot street belonging to the city of Brooklyn, without authority and without jurisdiction of the act they undertook to perform. They were neither directed nor authorized *to widen an old road,* and the only power that had the right to adjudicate, treated and considered the 66 feet as private property and not as a public road. All the proceedings on the part of the corporation of Brooklyn, in laying out the avenue in question, are absolutely void. By the act of 23d April, 1835, exclusive power to lay out, &c. was vested in three commissioners ; the proceedings in this case were commenced by the peti-

tion presented in March, 1836, after the power had been vested in another body—the act took effect on the 1st day of September, 1835. (*Laws of* 1835, *p.* 136. 6 *Paige's Rep.* 264. 5 *Id.* 501.)

THE CHANCELLOR. It is pretty evident in this case that an assessment has been made on the lands of the complainants, which must probably produce a total sacrifice of the property assessed, unless they can obtain relief, either in this court or by legislative interference. Judging from the facts before me, I cannot see how it was possible for the commissioners of estimate and assessment, to have come to the conclusion that the lands assessed could be benefitted to the amount of about $14,000 by the contemplated improvement; even upon the principles on which they proceeded relative to the Bedford road as a public highway, already laid out and established. As I understand the case, the assessment limits only included of the complainant's lands 107 feet on each side of the Bedford road as originally laid out by the turnpike commissioners, and extending in length on that road about 968 feet. This would give to the complainants 76 lots of 25 feet front, and 107 feet deep, upon a street of 66 feet in width. And if the contemplated improvement was made, they would have the same number of lots of 100 feet in depth, upon an 80 foot street. These lots, at the valuation fixed upon them by the second answer of the defendants, at the time of the assessment when lands were the highest, were worth $250; making the sum of $19,000 for the lands assessed. And yet it is supposed these lots will be benefitted by the widening and extending of this street $139,31; or about three fourths of their then estimated value, and nearly their full value one year thereafter, when the second answer was put in. It is possible, that some further benefits might accrue to these lots, by the extension of Bedford road beyond where it was already opened four rods wide, in addition to the benefit of having it fourteen feet broader in front of the lots assessed. But there is much reason to believe that the

guardian ad litem who was appointed to take care of the rights of these infants, and who was himself one of the applicants for the proposed improvement, has under the influence of mental hallucination, or otherwise, suffered their property to be assessed to about its full value, and probably much more than it is now worth ; as a supposed benefit which that property was to receive from the contemplated improvement. If the whole proceedings, however, have been regular, and the commissioners of estimate and assessment have merely erred in judgment, I think this court has no jurisdiction to correct their error, or to give relief to the complainants. For there is no allegation of fraud or collusion on their part, nor on the part of the guardian ad litem who was appointed in the mode prescribed by law to protect the rights of the complainants on that assessment, and to appeal from the decision of the commissioners, if he believed they had done injustice to these infants.

The first objection to the regularity of the assessment is that the commissioners of estimate and assessment have assumed that the turnpike road was not only regularly laid out, but that it was already the property of the public, so that the complainants were entitled to no compensation therefor. In this I think the commissioners were clearly under a mistake. For the purpose of this decision, I shall take it for granted that the turnpike was properly laid out, and that the damages of the complainants for that part of their farm which was taken for the use of the corporation were legally and constitutionally assessed, pursuant to the provisions of the general turnpike act of 1807. Still that act did not vest the title of the land in the turnpike company, even for the purposes of the road during the existence of the charter, until the actual payment of the damages which had been so assessed. The language of the statute is, that the turnpike corporation, upon paying to the owners of the land the sum assessed and awarded by the appraisers in their inquisition, shall and may have and hold the lands to them and their successors and assigns, &c. (1 *R. L. of* 1813, § 3, *p.* 231.) It is true, the statute

does, by an implication, authorize the turnpike company to enter upon the land for the purpose of making their road thereon, if there is no person living on the land who is authorized to receive the damages, unless such damages shall be lawfully demanded. The title to the land, however, is still in the original owner ; and the moment he demands the payment of the damages from the proper officers of the company, and the same are not paid, he may bring an action to recover the possession of the land. It is perfectly clear, therefore, that the complainants before they could be divested of their title to so much of their farm as was included in the old Bedford road, were entitled to the payment of at least the amount which was awarded to them by the appraisers in 1828. And the opinion of Ch. J. Nelson appears to be that they were entitled also to the benefit of the contingent right to the reversion in the land, in case of the dissolution of the corporation, or of the abandonment of the road. (*See Hooker* v. *The Utica and Minden Turnpike Company*, 12 *Wendell's Rep.* 371.) Whether the turnpike company was in existence at the time the commissioners of estimate and assessment made their report in the present case, does not distinctly appear from the pleadings ; but the legal presumption is that it was, as I have not found any statute dissolving that corporation, or authorizing it to abandon the road. It is clear, however, that if that corporation should be legally dissolved without having paid the amount awarded to the complainants for damages, the legal title to that part of the Bedford road which is in question here, would belong absolutely to the complainants; and that such title could not be divested, for the purposes of this public street, without paying them the full value of the land, either in money or in the benefits which would thereby accrue to them by the increased value of their adjoining lands. It does not distinctly appear in this case whether the petition to the common council for the improvement, and the resolution of the city corporation adopting the same, actually contemplated the taking of the lands included within the limits of the turnpike, as well as

the two narrow strips of each side of the same, for the use of the corporation as a public street. If the former was the case, then the confirmation of the report was irregular, and may still be opened ; as the commissioners have not in form appraised the damages to which the complainants, as the owners of the original site of the Bedford road through their farm, are entitled. And as I understand the recent decision of the supreme court *In the matter of Anthony-street*, (20 *Wend. Rep.* 618,) there cannot be an absolute confirmation of the report of commissioners of estimate and assessment, so as to give any vested rights under the same, until the damages for all of the lands taken for the proposed improvement have been ascertained and settled, and are properly assessed upon the owners of those lands which will be benefitted by the improvement. If this is the correct construction of the statute, and the resolution of the mayor and common council actually contemplates the taking of the whole of the old Bedford road for the purposes of this improvement, they ought not to be permitted to proceed and enforce this assessment against the complainants personally, by virtue of the distress warrant, or by a sale of their lands which have been assessed, until the proper steps have been taken to divest their title to the whole of the lands which are to be taken for the improvement, by an assessment of the damages and an offset of the same against the supposed benefit of their adjacent lands.

I think, however, there is a more conclusive objection to the proceedings of the defendants, in this case ; and that is, that the mayor and common council had no legal authority to lay out and open this new street through the lands of the complainants, in one of the new wards of the city, subsequent to August, 1835 ; until the same had been authorized by the commissioners appointed under the act of the 23d of April in that year, authorizing the appointment of commissioners to lay out streets, avenues and squares in the city of Brooklyn. That act, which took effect on the first of September after its passage, gives to the commissioners, to be appointed by the governor on the

1840.

Mc‌s role
v.
Mayor, &c. of
Brooklyn.

application of the mayor and common council, the exclusive power to lay out streets, avenues and public squares within that part of the city comprising the sixth, seventh, eighth and ninth wards, and to direct the closing of any streets, roads, highways, lanes, avenues or alleys which had not been theretofore approved of by the mayor and common council. (*Laws of* 1835, *p*. 136, § 4.) The previous act of the same day amending the charter of the city of Brooklyn, which went into effect immediately, must be so construed as not to conflict with the provisions of the act appointing these commissioners to make a permanent plan of this part of the city. It must therefore be construed to apply to that part of the city lying within the first five wards, and which was originally comprised within the bounds of the village corporation; or at least, to such streets as they should think proper to lay out according to a settled plan, in the four other wards, previous to the time when the act for the appointment of commissioners should take effect. Certainly it could not have been the intention of the legislature that two classes of officers should have the power to lay out streets and avenues in that part of the city during the same period, and that each should proceed according to a settled plan of their own. Neither could the mayor and common council continue their jurisdiction over the subject, (if their power extended to these four wards previous to the first of September,) by their neglect to apply to the governor for the appointment of commissioners until after this street was laid out; if such was in fact the case. The duty for which the commissioners were to be appointed was in its nature exclusive; independent of the express provisions of the act upon that subject. And until they had been appointed and had authorized the opening of the street now under consideration, I am satisfied the mayor and common council had no authority, after the first of September, 1825, to proceed by resolution to open the same, and to have commissioners of estimate and assessment appointed pursuant to the directions of the act of 1833.

The vice chancellor was therefore authorized to interfere by injunction to restrain the defendants, under color of authority, from proceeding in an illegal act, which must necessarily cast a cloud upon the complainant's title; and to set aside these unauthorized proceedings which had already taken place. (*Oakley* v. *The Trustees of Williamsburg*, 6 *Paige's Rep.* 262. *Pettit* v. *Shepherd*, 5 *Idem*, 501.) For these reasons, the order appealed from must be affirmed with costs.