[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 536 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 537 
This is an an action in the nature of a suit in equity, brought in the superior court in the city of Buffalo, demanding judgment that a certain assessment made by the city assessors under the authority of the common council of the city, with the approval of the mayor, upon the lands of the plaintiff, situated in school district number two, in said city, be declared null and void; and that the defendants be perpetually enjoined from proceeding to collect and enforce the said assessment against the plaintiff. The complaint alleges that the whole assessment was $7500 upon said school district, and was made for the purpose of defraying the contingent expenses thereof. The plaintiff is the owner of several lots in the district, and his proportion of this sum is assessed upon the lots. Various grounds of illegality in making the assessment are alleged in the complaint, which are all admitted by the demurrer.
The principal question in the case is, whether the plaintiff is entitled to this species of relief; and if that shall be determined against him, it will be unnecessary to examine the particular illegality specified. It was an appeal to the equity powers of the court in which the action was brought, and the relief sought was strictly of an equitable character. In order, therefore, to give the plaintiff the right to litigate this question on the equity side of the court, and the court power to administer that species of relief, it was necessary for him to state in his complaint facts constituting an equitable *Page 538 
cause of action. He was bound to make out a case falling under some acknowledged head of equity jurisdiction. It is claimed that the assessment is a lien, and being unauthorized, is a cloud upon the plaintiff's title, which equity alone has power to remove. It is also claimed that the court has the right to interpose its equitable powers to restrain the collection of a tax founded upon an illegal assessment.
It is true that such an assessment and tax is a lien upon real estate, and as such has preference over prior mortgages and judgments. The charter (Laws of 1853, 476, tit. 5, § 12,) makes every unpaid tax and assessment a lien upon the land on which it is assessed or charged, for two years from the time when the roll containing it was delivered to the receivers. (Mayor ofNew-York v. Colgate, 2 Kern., 140.) This, of course, means a legal assessment. But an assessment made by a board or body having no power to make it, is a nullity, and no lien upon any property. It is claimed, however, that such an assessment is an apparent lien, and should be removed as a cloud, for the reason that it is invalid. But the power of municipal and other inferior officers or bodies to make assessments is in the law, and is as apparent as the act of assessment, and if the assessment is without authority it is not even an apparent lien. If, however, such an assessment is to be regarded as an apparent lien, it does not follow that it is a cloud within the cognizance of a court of equity.
The very point was adjudged against the power of the court in such a case, by the late court for the correction of errors. (The Mayor, c., of Brooklyn v. Meserole (26 Wend., 132), reversing the decision of the chancellor in the same case. (8Paige, 198.) This decision was subsequently followed by the chancellor in Van Doren v. The Mayor, c., of New-York (9Paige, 388). The relief sought by the bill in the last case was identical with that demanded here. The bill was demurred to and was dismissed on the express *Page 539 
ground that the court had no power to afford the relief. The chancellor, in delivering his opinion, says he understands that the court for the correction of errors in Meserole v. TheMayor, c., of Brooklyn, "repudiated the idea that the court of chancery had any power or right to interfere in such cases, in relation to any supposed error or irregularity in the assessment, or in the proceedings of the corporation, or of the commissioners of estimate and assessment."
The decision in Mooers v. Smedley (6 John. Ch. R., 28), is to the same effect. That was a bill filed to restrain the collector from collecting a tax levied for wolf bounties, and to restrain the supervisors from paying over the money to the persons claiming the bounties, on the ground that the supervisors of the county had allowed the charges and levied the tax in violation of law. Relief was denied upon the express ground that it did not belong to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors in their examination and allowance of accounts as chargeable against their county, and in causing the moneys so allowed to be raised and levied. Chancellor Kent, in his opinion, says: "This is not a case of private trust, but the official act of a political body; and in the whole history of the English court of chancery, there is no instance of the assertion of such a jurisdiction as is now contended for." The general doctrine seems to be firmly established, that the correction of errors, in the proceedings and determinations of these inferior political jurisdictions is matter of legal and not equitable cognizance. And especially where, as in this case, it is a mere question of power, and there is no allegation of fraud or corruption in the body, or the officers by whom the assessment is authorized or made. The supreme court, as at present organized, has thus far steadily refused to lend its equitable powers for such purposes. (Livingston v. Hollenback, 4 Barb., 10; Thatcher v.Dusenbury, 9 How. Pr., 32; Bouton v. The City ofBrooklyn, 15 Barb., 375.) The usual *Page 540 
and undoubted remedy by certiorari, is always open to every party conceiving himself aggrieved. That writ brings up the proceedings of the inferior body for review, and judgment passes directly upon their proceedings and determinations thus reviewed.
It is claimed that the superior court, being possessed of both law and equity powers, had jurisdiction of the subject matter, and having jurisdiction, should have rendered judgment appropriate to the injury complained of and admitted by the demurrer. But its equitable powers only were invoked, and if the plaintiff failed to make out a case of equitable cognizance in his complaint, he was entitled to no judgment. Because the same court had power to set aside the assessment, had all the proceedings been removed into it by the appropriate writ from the inferior tribunal, it does not follow that a party may have the same relief in any other form of proceeding. There is a wide and radical distinction between bringing the record of the proceedings of an inferior body before a court for the purpose of having them reviewed and passed upon directly by such courts, and either reversed or affirmed, and bringing an original action, founded upon some alleged error in the proceedings of such body, and demanding judgment, not upon errors in the record, but upon the allegations of error in the complaint. Whatever distinctions may have been abolished by the Code of Procedure, this certainly has not. Indeed, it is still the law that a party who brings an equitable action must maintain it upon some equitable ground; and if his cause of action is of a legal and not an equitable nature, he must bring a legal action, or pursue a legal remedy. Where a matter is clearly or prima facie one of legal cognizance, a party must, in order to maintain an equitable action upon it, state clearly facts sufficient to entitle him to equitable relief, and to show that a perfect remedy cannot be obtained at law. *Page 541 
The general rule established by the decisions seems to be subject to three exceptions: First. Where the proceeding in the subordinate tribunal will necessarily lead to a multiplicity of actions; Second. Where they lead, in their execution, to the commission of irreparable injury to the freehold; Third. Where the claim of the adverse party to the land is valid upon the face of the instrument, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proved, in order to establish the invalidity or illegality. Whenever a case is made by the pleadings falling within these exceptions, or either of them, equity will interpose to arrest the excessive litigation, or prevent the irreparable injury, or remove the cloud from the title. The plaintiff's counsel seeks, in his submitted argument, to bring this case within one or all of these exceptions. But I think he has entirely failed to bring it within either exception by his complaint. There can be no pretence that additional suits are to be prevented by a judgment in the plaintiff's favor in this action. It is brought for the benefit of no one except himself. Nor is it shown by the complaint, nor can it be, how the assessment and levy of a tax merely, even if entirely illegal, could work irreparable injury, or any injury to the freehold. They might, should the tax be collected, work an injury to the plaintiff by depriving him of his property, but could work no injury to the freehold. In order to bring the case within the third exception, and the jurisdiction of equity on that ground, the complaint should have set out, in terms, the resolution of the common council upon which the assessment was based, that the court might see whether it was apparently within the jurisdiction of that body; or it should have alleged, distinctly and plainly, that the proceedings were apparently within the powers of the common council, and upon their face were valid, and created a valid lien; and it should then have alleged that, notwithstanding such apparent validity, the proceedings were wholly void by reason of certain extrinsic matters, which should be *Page 542 
stated, and which it should appear by the complaint, could only be established by other evidence. These facts are the very grounds of the jurisdiction. Apparent validity, and total invalidity in fact, which can only be established by proofaliunde. If partial invalidity only is established, no case is made for the interposition of equity to remove a cloud. It is no cloud if the lien is to any extent valid.
The complaint entirely fails to show that the several purposes alleged to be unauthorized and illegal, for which the gross sum was assessed, do not appear in the resolutions or proceedings of the common council. The presumption, I think, is that they do there appear, as the contrary is not alleged, and the several objects or purposes are specified in the complaint. In this view it is a clear case for the common law certiorari, and one with which equity ought not to interfere. There is a vague allegation that the assessment does not state the specific purposes for which it was required, but that is not enough.
The doctrine established by the decisions is substantially this, that if the proceedings are void upon their face, they form no cloud upon title, and no ground of interference by a court of equity. And if they are not void upon their face, but merely voidable or irregular, a court of equity will not take cognizance of them, unless other facts are alleged sufficient to bring the matter clearly within some acknowledged head of equity jurisdiction. This is a sound and salutary rule, which should be steadily adhered to upon considerations of public interest and convenience, if no other. It is not the business of courts to furnish new remedes to parties aggrieved, even though existing ones are found inadequate to afford perfect protection or redress. That falls more properly within the province of the legislature. But if they had the power they would hesitate before extending their equitable jurisdiction over all the acts of these inferior bodies, and allowing every one assessed to come in and litigate as to the *Page 543 
validity of his tax, before he should be required to pay it, who could allege some error in making the assessment.
I am, therefore, of opinion that the judgment of the superior court was correct and should be affirmed.