WHITMAN CLARK and others, Respondents, v. THE VILLAGE OF DUNKIRK and GEORGE F. SEYBOLT, Appellants.

*Action to vacate assessment — when it can be maintained — allegations of complaint in — It cannot be brought for relief against personal tax — What errors will avoid an assessment.*

Whenever an assessment is invalid, and such invalidity is shown only by matters *dehors* the record, which in itself is in all respects regular, and within the power and jurisdiction of the authority laying the same, an action in equity may be maintained by any one, upon whose real estate an apparent lien· has been created by the assessment, in behalf of himself and others in like situation who may come in and contribute, to have the same canceled, and to restrain the enforcement thereof.

To justify such an action, it must be alleged in the complaint that the assessment is regular upon its face, and apparently in accordance with the provisions of the charter authorizing it.

Such an action cannot be maintained for relief against a mere personal tax or assessment.

Where, in an action to set aside an assessment to defray the cost of constructing a sewer, it appeared that some of the land assessed was lower than the bottom of the sewer, that a portion of it could not be drained into it without a considerable expense and change in the surface of the lots, that a portion could not drain into it without crossing the land of third persons, and that certain lands were assessed at a uniform rate, without regard to the distance they were situated from the sewer, or the expense of connecting therewith, *held*, that the assessment should be set aside.

APPEAL from a judgment in favor of the plantiff, entered upon the report of a referee.

This action was commenced to enjoin the collection of an assessment imposed for the construction of a sewer in the village of Dunkirk, and to have the same declared illegal and void.

The referee found, among other things, that the village of Dunkirk, a duly incorporated village, in pursuance of the charter of said village, ordered the construction of a sewer in Lion street, between Fifth street and Lake Erie; that a sewer was constructed in said street as provided in the said charter, and accepted by said village on the 22d day of November, 1875; that the cost and expense of constructing said sewer was $9,118; that, on the 22d day of November, 1875, assessors were duly appointed by said village to make a local assessment on the property benefited by the construction thereof; and that their assessment was made and filed with the clerk of said village, and that said village thereafter confirmed the same; that said village, in pursuance of its charter, caused a warrant to be issued and annexed to said assessment roll and delivered to the collector of said village, George F. Seybolt, one of the defendants, who, in pursuance thereof, proceeded to collect the said assessment so made; that all of the proceedings of said village taken for the construction of said sewer, and the assessments of the costs and expenses thereof, were regular, and no defect existed upon the face of any of the proceedings; and no irregularity was manifested on the part of said village or said assessors in constructing said sewer and making said assessment, so far as appeared from the record and proceedings of said village relating to the same, or from the proceedings of said assessors; that said assessment was a lien upon the real estate of the plaintiffs, as well as upon the real estate of the other persons named in said assessment; and the said real estate was liable to be sold for the non-payment of said assess-

ment; section 17 of title 19 of chapter 479 of 1867 (village charter) makes the certificate of sale evidence that such sale was regularly made according to the provisions of said act; that the said assessors, in making their assessments upon the property alleged to be benefited by said sewer, did not take into consideration the value of the buildings and improvements upon the lands so assessed (amounting to over $100,000 in all), and assessed the lands exclusive of such improvements; that a portion of the lands assessed on the easterly side of Ruggles street, southerly from Wright, and on the easterly side of Griswold, southerly from Talcott, cannot be drained into sewer without considerable expense and without changing the surface of the lots; that the land on the east and west of Lion street, between Front and Second streets, is, much of it, lower than the bottom of the sewer, and incapable of being drained into said sewer; that the property known as the Phillippbaar property, situated on East Third street, is in no wise benefited by said sewer; that the property assessed as being benefited by said sewer was not and is not benefited by the sewer; that on the north of Griswold street, as indicated on said map, is a brook running across Ruggles street and Railroad avenue; that much the greater part of the land on King, Griswold and Ruggles streets slopes toward said brook, and that the surface water in all said streets, at the time of the construction of said sewer, ran through said streets into said brook; and this has been the course of said water ever since said streets were opened and worked; that the individuals living on Ruggles street (and assessed to pay said assessment), and their grantors, have heretofore drained their lands from the rear of their said premises into said brook; that said brook abuts upon their premises, and that the inclination of the surface of the land and course of the water is toward said brook; that none of the persons living on the north side of said Ruggles street, between Talcott and Wright streets, are benefited by the constructing of said sewer; that the natural course of the surface water in Smith and Beaver streets and Lion street, south of Fifth street, has been into the creek known as Elk Street creek; that the surface water on these streets has, ever since the same were opened and worked, and until the construction of said sewer, run into said creek; that the greater portion of the surface water flowing in Smith and Beaver streets

comes from Bennett road and Seventh street, and the property on said streets is not assessed; that the water coming along Bennett road to Smith and Seventh to Smith has been diverted, to some extent, from its natural water-course; that the plaintiffs are not benefited by the construction of said sewer; and the referee found, as conclusions of law, from the foregoing facts, that plaintiffs were entitled to judgment in this action; that said assessment be declared illegal and void; and that the plaintiffs were entitled to an injunction forever restraining the collection of said assessment and tax by the defendants, or either of them, or their or either of their officers or agents; and that the plaintiffs recover of the defendant, the village of Dunkirk, the costs in this action to be taxed; and judgment was ordered accordingly.

*Thomas P. Grosvenor*, for the appellant. The legislature, in the exercise of its constitutional authority, having made the assessors the tribunal to decide questions of value and the like, and provided no appeal, its decision is final, so far as questions of judgment and discretion are concerned. ( *Weaver* v. *Devendorf*, 3 Denio, 117; *Buffalo and State Line R. R. Co.* v. *Supervisors of Erie Co.*, 48 N. Y., 93; *Yeomans* v. *Simmons*, 14 N. Y. Sup. Ct. [7 Hun], 469; *Marvin* v. *City of Buffalo*, 23 Barb., 166; *People* v. *City of Rochester*, 5 Lans., 144, MULLETT, J.; *Kilbourne* v. *St. John*, 59 N. Y., 27; *Zink* v. *City of Buffalo*, 6 Hun, 611; *Western Railroad* v. *Nolan*, 48 N. Y., 518; *Susquehanna Bank* v. *Supervisors Broome County*, 25 id., 314; *Dows* v. *City of Chicago*, 11 Wallace [U. S.], 108; *Kilbourne* v. *St. John*, 59 N. Y., 25; *Murrill* v. *Brooklyn*, 3 Edward's Ch., 421; *Mooers* v. *Smedley*, 6 Johns. Ch. 28; *Mace* v. *Trustees of Newburgh*, 15 How. Pr., 161; *Mayor of Brooklyn* v. *Merserole*, 26 Wend., 132.) The referee should have granted the motions for nonsuit, as asked for at close of plaintiff's case, for misjoinder of the parties plaintiff. The complaint and the evidence taken at the trial show that the plaintiffs named in the complaint have no common interest in the land affected by this assessment, but, on the contrary, own their lots in severalty. They cannot, therefore, join in a suit in equity to restrain the collection of this tax. (*Bouton* v. *The City of Brooklyn*, 15 Barb., 375;

*McGee* v. *Culter*, 43 id., 240 ; 25 Conn., 232.) The defendants did not waive their right to object to the improper joinder of parties by not demurring or objecting thereto in their answer. (*Porter* v *Kingsbury*, 5 Hun, 597 ; *Simon* v. *Canaday*, 53 N. Y., 298 ; *Palmer* v. *Davis*, 28 id., 242.) The fact that some other person not assessed should have been, is no ground for these plaintiffs to maintain their suit. It might afford a sufficient reason for correcting, or even annulling, an assessment by the proper tribunal and in a proper proceeding (appeal or *certiorari*), but it has never been admitted as a ground for the interposition of a court of equity. (*Muscatine* v. *Mississippi*, 21 Wis., 566 ; also cited in 1 Dillon's Pr.)

*F. S. Edwards*, for the respondent. Courts will interfere by injunction : First, where the proceedings will necessarily lead to a multiplicity of claims ; second, where they lead in their execution to the commission of irreparable injury to the freehold ; third and fourth, where the tax is upon the land, and the law allows it to be sold to collect the tax, and the conveyance to be executed by the proper officer would be *prima facie* evidence of title. (*Hayward* v. *City of Buffalo*, 14 N. Y., 541 ; *Hamlin* v. *Supervisors of Westchester County*, 8 Abb. [N. S.], 261 ; *Cook* v. *Andrews*, 40 N. Y., 547, 549 ; *Hatch* v. *City of Buffalo*, 38 id., 276 ; *Allen* v. *City of Buffalo*, 39 id., 386 ; *Railroad Company* v. *Brownell*, 24 id., 348 ; *Shaw* v. *Dwight*, 27 id., 247 ; *Wood* v. *Seeley*, 32 id., 110, 113, 114, 117 ; *Newell* v. *Wheeler*, 48 id., 486 ; *Roosevelt* v. *Barnum et al.*, 12 How., 469 ; *Wood* v. *Draper*, 4 Abbott, 322 ; *Christopher* v. *The Mayor et al.*, 3 Barb., 567 ; *Stuyvesant* v. *Pearsall*, 15 id., 244 ; Edwards on Parties, 40 ; Code, § 119 ; *McKinzie* v. *L'Amoreux*, 11 Barb., 518 ; *Robinson* v. *Smith*, 3 Paige, 222, 231 ; *Cady* v. *Conger*, 19 N. Y., 256, 261 ; *Hanson* v. *Vernon*, 1 Am. R., 215 ; *Steines* v. *The Franklin Co.*, 8 id., 87 ; 14 id., 394 ; 24 Barb., 187 ; 12 N. Y. S. C. R., 67 ; *Marsh* v. *City of Brooklyn*, 59 N. Y., 280.) The following cases are referred to as bearing directly on the questions at issue : *Longley* v. *City of Hudson* (4 Thompson & Cook's N. Y. Sup. Ct. R. [part 3], 353) ; *The People* v. *City of Brooklyn* (23 Barb., 166, 173 ; 6 id., 209, 211) ; *Lutes* v. *Briggs* (12 N. Y. Sup. Ct. R., 67) ; *Hassan* v. *City of Rochester* (6 Lans., 185, 195) ; *Ayers et al.* v. *Lawrence et al.* (59 N. Y., 198). All the

cases which have decided that a tax-payer could not maintain the action to set aside an illegal assessment, are based upon the doctrine laid down by the Court of Appeals in *Roosevelt* v. *Draper* (23 N. Y., 323); *Doolittle* v. *Supervisors, etc.* (18 id., 155), which cases are directly overruled by the case of *Ayers* v. *Lawrence* (59 id., 192), under the act of 1872, and this act was passed to obviate the difficulties arising to parties by reason of those decisions.

TALCOTT, J.:

This is an appeal from a judgment rendered on the report of a referee.

The complaint seeks to restrain the proceedings of the village corporation respecting an assessment for the payment of the expenses of constructing a sewer in Lion street, in the village of Dunkirk, and to set the same aside for various reasons alleged, none of which appear on the face of the proceedings, which are conceded to be, so far as the formal proceedings are concerned, in all respects regular and according to the charter of the said village.

The action is sought to be maintained on the ground that the assessment roll has been confirmed and filed and the warrants of the village attached thereto, directing the collector of the village to collect the sum of $9,118 out of the property of the several persons named in said assessment roll, and that said collector is now proceeding to collect the amount specified out of the property of the several persons thereby assessed. The action could not be maintained to relieve against a mere personal tax or assessment. (*Mooers* v. *Smedley*, 6 Johns. Ch., 30; *Heywood* v. *Buffalo*, 14 N. Y., 534.)

It is supposed by the counsel for the respondents that an action may be maintained in equity for this purpose under the decision in *Ayers* v. *Lawrence* (59 N. Y., 192). That decision was based upon the statute (Laws of 1872, chap. 161), which was admitted to have introduced a new rule as to cases arising under the statute, but the statute does not apply to this case. It is "to prevent waste or injury to any funds or estate of such county, town or municipal corporation" for which an action under that statute will lie at the suit of a tax-payer. The case of *Ayers* v. *Lawrence* was decided by a nearly equal division of the court of last resort, and is not to be

extended beyond the limits of the case then under consideration. It is only upon the ground of removing a cloud upon the title of the plaintiffs, and those in a like situation who may be disposed to come in with them and seek the benefits of the suit. That the action can be maintained, and upon the ground that the acts of the village authorities have, so far as the formal and recorded proceedings go, been entirely regular and in accordance with the provisions of the charter of the village, and that the invalidity of the assessment appears only *dehors* the record, that the action in equity can be maintained. (*Crooke* v. *Andrews*, 40 N. Y., 547; *Heywood* v. *Buffalo*, 14 id., 541; *Hatch* v. *Buffalo*, 38 id., 276.)

If the invalidity appeared upon the face of the proceedings they could be set aside upon a common-law *certiorari*.

But as we understand the law to be now settled, whenever an assessment is invalid and such invalidity is shown only by matter *dehors* the record, which in itself is in all respects regular, and within the power and jurisdiction of the authorities an action in equity may be maintained by any one upon whose real estate an apparent lien has been created by the assessment.

The objections to the assessment, as found by the referee in this case, consist of divers matters showing the assessment to be unjust, unequal, and not in accordance with those provisions of the charter which require the assessors to determine what property is benefited by a sewer, "and to assess upon such property so benefited the cost and expense of its construction, according to the determination of said board of trustees, in a just and equitable manner, and as nearly as may be in proportion to the advantages which such owner of property may be deemed to derive therefrom." (Charter of Dunkirk, chap. 479, Laws of 1867, title 12, § 3.) The counsel for the appellant refers us to the case of *Sanders* v. *Yonkers* (63 N. Y., 492), but the distinction between that case and the one at bar is to be found in the fact that the assessment is not charged to be illegal on the face of the proceedings and is found to be wholly regular and apparently in accordance with the provisions of the charter, and this circumstance is adverted to in the opinion in that case, which came up on demurrer, by the court saying "there is no allegation in the complaint that the assessment is, on its face, regular;" as a reason why an action

cannot be maintained to remove it as a cloud upon the title; leaving the inference open, that if an allegation had been contained in the complaint in that case, embodying the fact found in this, that the assessment was, on its face, regular, the action would have been held maintainable.

It is unnecessary to inquire in this case whether the statute makes any certificate of sale or any other record presumptive evidence of the regularity of the proceedings, since it is found and admitted that the proceedings touching the assessment are all regular on their face, and the matter which shows the invalidity of the proceedings arises outside of the record, and is to be shown mainly by parol testimony.

The charter of the village declares, " every tax and assessment, for whatever purpose imposed, charged on any real estate within said village, shall be a lien upon the real estate so charged, from the time of the completion and filing of the assessment roll with the clerk of the village, until the expiration of two years after such filing,    *    *    *    and the board of trustees may, at any time within said two years, sell such real estate to satisfy such tax, as herein provided." (Charter, title 19, § 2.)

To show that the assessors in this case have proceeded upon erroneous principles in the details of their assessment, it will only be necessary to refer to two or three of the findings of the referee. He finds that some of the property assessed is not benefited at all by the sewer; that some of the land assessed is lower than the bottom of the sewer and cannot be drained into the sewer; that a large portion of the land assessed cannot be drained into the sewer without a considerable expense and changing the surface of the lots. It also appears that certain of the persons assessed cannot reach the sewer in question for purposes of drainage, without crossing lands belonging to others, and that certain lands were assessed at one uniform rate per foot, without regard to the distance they were situated from the sewer or to the expense of making a connection therewith.

It was held in *The People ex rel. Marvin* v. *Brooklyn* (23 Barb., 166), " if it is entirely clear that any portion of a proposed district cannot be benefited, an attempt to render the property in it liable to pay a part of the expenses may be defeated, if not before the

corporate authorities, certainly before a judicial tribunal having the power to annul and correct the proceedings," and in the same case " where there is not and cannot be any connection between the property and the projected sewer, such property is beyond the limits of rightful assessment."

And in *The People ex rel. Parker* v. *The County Court of Jefferson County* (55 N. Y., 604), under the provisions of the act for draining overflowed lands, it was held that if an erroneous rule is adopted *e. g.* an apportionment by the *acre*, instead of according to the benefit, that the assessment was properly set aside by the County Court.

We think it is obvious in the present case, that the assessors adopted erroneous rules as the basis of their assessment, and in so doing violated the spirit and intent of those provisions of the charter of the village of Dunkirk which provide for the assessment of the expense of the sewer "in a just and equitable manner, and as near as may be in proportion to the advantages which such owner of property may be deemed to derive therefrom," and consequently we must affirm the judgment.

Present — TALCOTT, P. J., SMITH and MERWIN, JJ.

Judgment affirmed.