## THE PEOPLE OF THE STATE OF CALIFORNIA v. J. B. CROCKETT, LUCY B. PAGE, and WILLIAM A. PIPER.

Land Liable to Taxation.—A grant of three square leagues of land made by the Mexican Government, to be selected within exterior boundaries containing a much larger tract, after two prior grants have been located within the same boundaries, is real estate liable to taxation, although not yet surveyed, provided there is land enough within the exterior boundaries to satisfy the grant or any part thereof.

Description of Land in Assessment.—If the Assessor, in assessing a tract of land which consists of a specific quantity granted by the Mexican Government, to be selected within the exterior boundaries of a much larger tract, describes it as definitely as the nature of the case will admit of, the assessment is valid. ·

Appeal from the District Court, Fifteenth Judicial District, Contra Costa County.

The plaintiff recovered judgment, and the defendants appealed.

The other facts are stated in the opinion of the Court.

J. B. Crockett, for Appellants.

At the date of the assessment the defendants had no title or claim to and were not in possession of any *specific* parcel

of land. All that was confirmed to their grantor was a float-ing claim to three leagues of land, within certain limits, provided so much should remain, after two other grants were finally located. Until these were located and segregated, it was wholly uncertain to what lands the claim of the defend-ants would or could attach. The fee remained in the Govern-ment to the entire *sobrante* until, through its proper officers, it had located the two grants, (Pinole and Las Juntas,) and had assigned to Soto that portion of the *sobrante* to which she was entitled. Until a final survey, the claimants of Pinole and Las Juntas were entitled to the possession of all the lands within the exterior boundaries of their respective grants. Soto was entitled to no particular land, nor to the possession of any, until the surveys became final. El Pinole and Las Juntas contained within their exterior boundaries over eleven leagues, of which they were entitled to seven, and to the possession of the whole until their respective quantities were set apart, which had not been done at the date of this assessment. The Act specially requires the Assessor to state the " location and township " in which the land is situate. In this case, that was wholly impracticable, and could not possibly have been done; nor was there any specific body of land known as the rancho " Cañada del Hambre," as appears from the facts admitted. What descrip-tion, then, does this assessment contain? It gives neither location or township, for it was impossible to give either.

*H. Mills*, for Respondent.

By the agreed statement of facts it is admitted that the title has been confirmed, and that the defendants, as pur-chasers from De Soto, own it. If, then, the lands claimed to be owned by the defendants upon the confirmation of the title and the dismissing of the appeal, vested in the defendants the title, then they, the defendants, had a severable interest from the United States, and although it might not in fact, at the time of the levying of the tax, be severed, still it would

occupy no different position from that of any other tract of land held in joint tenancy or by tenants in common. The interest the defendants had and claimed to have was a real and valuable interest. But, it is argued, there is no *specific* parcel of land to which this claim could attach. It is, however, admitted that there is sufficient of the surplus of the Pinole and Las Juntas Ranchos to make such specific parcel, and that defendants own and claim it. It is also argued that until a final survey the claimants of the Pinole and Las Juntas Ranchos were entitled to all the lands within the exterior boundaries of their grants. The question is not who is entitled to the possession, but it is simply, should this property pay a tax or bear its proportion of revenue for its and its owner's protection by the Government? If not, why? Section five of the Revenue Act declares that " the term ' real estate' shall be deemed and taken to include, and it is hereby declared to mean and include the ownership of, or claim to * * * any land within the State." The answer of the defendants does not deny the allegation in the complaint that the defendants are the owners of the property described, nor do the stipulated facts in any manner show but what the defendants are the *owners* of the property; nor is it pretended that too much property has been assessed, or that the same is valued too high.


By the Court, SAWYER, J.:

This is an action to recover taxes for the year 1865–6, assessed in the County of Contra Costa upon " the real estate described as follows : Three leagues of land situate in said county, granted by the Mexican Government to Teodora Soto, and called or known by the common name or designation, as the ' Rancho Cañada del Hambre,' being a *sobrante* of the El Pinole and Las Juntas Ranchos, after the same shall have been surveyed and located, equal to thirteen thousand three hundred fourteen acres of land, assessed at three

dollars per acre, amounting to thirty-nine thousand nine hundred forty-two dollars."

The cause was submitted to the District Court upon an agreed statement of facts, from which it appears that the " Rancho el Pinole " is a grant confirmed to the extent of four leagues, lying within larger exterior boundaries containing about seven leagues; that the " Rancho las Juntas " is a grant confirmed to the extent of three leagues, lying within larger exterior boundaries containing four leagues—the said two ranchos being contiguous; that a grant subsequent in date, not exceeding three leagues, was made to Teodora Soto, called " Rancho Cañada del Hambre," out of the *sobrante*, or surplus, which should remain after the Ranchos El Pinole and Las Juntas should be located, which grant has also been confirmed to the extent of three leagues, there being more than sufficient left of the *sobrante* to satisfy the amount called for; that, after the final location of the other two ranchos, Teodora Soto and her assigns are entitled to elect upon what part of the *sobrante* their grant shall be located; that after having been finally confirmed, all these ranchos were surveyed, but the surveys were set aside by the United States District Court, and new surveys ordered, with leave to Soto's assigns to apply for another survey after the other two ranchos are surveyed and approved; that a new survey of Las Juntas had been made and returned to the District Court, but the time for appeal had not expired; that, at the time of commencement of this action, no new surveys had yet been made of El Pinole, or the lands confirmed to Teodora Soto; that the lands so confirmed to Teodora Soto are the same lands described in the complaint; that no specific parcel of land was well known by the name " Cañada del Hambre," though the facts aforesaid were well known, and the personal defendants claimed to own the lands confirmed to Teodora Soto, but at the time of the assessment did not claim to own the lands described in the complaint otherwise than as grantees of Teodora Soto, under the title aforesaid;

20

that, at the time of the assessment, said defendants were not in the possession of any portion of said lands; and that said lands were duly assessed to the defendants, except so far as the assessment may be rendered invalid and of no effect by reason of the facts aforesaid.

The point made is, that the defendants had no title or claim to, or possession of, any specific tract of land; that there was a mere floating claim to a certain quantity of land—three leagues—which they were authorized to locate within certain designated boundaries embracing about eleven leagues, after two other contiguous grants, containing in the aggregate seven leagues, should be located; that until finally located, it could not be known what specific land is owned or claimed by them; and that there is nothing to serve as a basis of assessment, or valuation, and nothing having the quality of taxable property, or liable to be taxed, under the statutes of the State.

There can be no doubt that the defendants have a present vested interest in three leagues of land within the designated boundaries. It is uncertain, as yet, to which specific three leagues the rights of the parties will ultimately attach,, but the interest is no less a vested interest in land. ( *United States* v. *Fremont,* 17 How. 558; *Higgins* v. *Houghton,* 25 Cal. 256.) It is undoubtedly property, and valuable property; and it must be, in fact, real estate. As such it may be sold and conveyed, for defendants claim under the grantee, Teodora Soto. It would be difficult in a conveyance to describe the property more specifically than it is described in the assessment. It could, doubtless, be sold under execution. The parties have a title in equity at least. (*People* v. *Shearer,* 30 Cal. 645, and cases cited.) The worst that can be said, is, that the legal title remains in the United States, but in trust for the grantee; and that the precise land within the larger tract, to which the title will ultimately attach itself, has not yet been ascertained. But it is still property, and as such clearly capable of taxation. If there is no property interest capable of taxation in the defendants, then there is none in

the owners of the "El Pinole," and "Las Juntas," ranchos, for the same reason, nor in the proprietors of any of the numerous grants in this State of a specific quantity of land within larger external boundaries. Admit that the owners of these other grants are in possession, still it would only be their possessions that could be taxed, and not the lands themselves, or their interest in the title, for until located they have but a floating claim, which has not yet attached to any specific tract of land. Upon this theory, there has been for the last eighteen years but very little land in the State capable of, or subject to, taxation as lands. Such a theory is wholly inadmissible. Clearly, the interest of the defendants in the land under the confirmed grant to Teodora Soto is property capable of taxation, and if it is not taxable, it is owing not to the character of the interest held, but to a defect in the statutes providing for the assessment and collection of taxes.

The fourth section of the Revenue Act of 1861, applicable to Contra Costa County, provides, that " all property of every kind or nature whatsoever, within this State, shall be subject to taxation," with certain specified exceptions which do not embrace the interest in question. (Laws 1861, Sec. 4.) We have seen that the interest of the defendant is vested, and is property capable of taxation. The language of this section is certainly broad enough to cover it, and shows an intention to tax it. The fifth section provides that " the term ' real estate,' whenever used in this Act, shall be deemed and taken to mean and include, and it is hereby declared to mean and include, the ownership of or claim to  *  *  *  any land within the State  *  *  *  and the claim by  *  *  *  any person  *  *  *  to any land, shall be listed under the head of real estate."

Section thirteen requires the Assessor to ascertain all property, real and personal, in his county, and the value of the same, and list it to the person, etc., owning or having possession, charge or control thereof. Section fourteen requires owners to give a list and description of property, real and personal, in other counties, to the Assessors. And

section twenty prescribes the mode of listing, and that the real estate shall be " described by metes and bounds, or by *common designation or name ;* if situate within the limits of any city or incorporated town, describing by lots and fractions of lots; if without said limits, giving the *number of acres as nearly as can be conveniently ascertained,* and the location of the township where situated," etc.      These are the provisions bearing upon the question.      The Act of March 6th, 1863, referred to, appears to be an amendment to other Acts which have no application.

That the Legislature intended that this species of property should be taxed, and that it is embraced in the terms " all property of every kind and nature whatsoever within this State," there can be no doubt.      And we think the other provisions are sufficiently comprehensive to enable the Assessor to assess it.      There is the ownership of three leagues of land granted by the Mexican Government and actually confirmed to the defendants and their grantor, to be located within certain specific bounds, embracing about eleven leagues, but not yet located.      The right to so much land within the bounds is vested and indefeasible.      It is well known " by a common designation or name," and the *quantity* and external bounds are known.      It is bought and sold, and dominion is exercised over it by the description given, and may be sold under execution and otherwise affected by judicial proceedings.      The precise land to which the title will ultimately attach is not known, and for this reason it may not be possible to estimate the relative value for purposes of assessment so accurately as it could be done if finally located.      But the same elements exist for assessing its value for purposes of taxation, as for purposes of business transactions, or sales under execution; and this is all that can be said of any specific piece of property.      It may very well be assumed, that those, who are entitled to the first election of location, will take the most valuable portions of the whole, and that the defendants, when they come to locate, will elect the most valuable of the land which will remain.      Business men about to purchase would,

doubtless, so look at the matter. There is a right of property, with an actual marketable value, uncertain as the location may be, depending upon principles which business men will understand. And an Assessor, of course, should, and doubtless would, regard these principles in making an assessment. He may not be able to estimate the valuation so accurately as he could if he knew exactly upon which specific tract of land the title attaches; but the fact that the relative value cannot be ascertained with mathematical precision, is no reason why valuable property should not be assessed at all. If that were a valid reason for not taxing property, all property would escape taxation.

The precise points now relied on by appellants, were made and overruled in *Palmer* v. *Boling*, 8 Cal. 389. The Court, however, also thinks the assessment can be sustained on another ground, and afterward says that the points may be conceded, for the purposes of this case; for the survey was finally confirmed four days before the time for making the assessment expired; and as the precise time of making the assessment did not appear, it must be presumed that the officer did his duty, and made the assessment subsequent to the survey.

The description of the property is as definite as the nature of the case will admit of—as good, doubtless, as the owner would be able to give, if about to sell it. It would pass the title in a conveyance. We think the requirements of the statute substantially complied with in the assessment, and that the property was properly taxable and taxed.

Judgment affirmed.


CURREY, C. J., dissenting:

I dissent.