BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PUEBLO *v.* CENTRAL COLORADO IMPROVEMENT COMPANY.

MEXICAN LAND GRANT — WHEN TAXABLE. When the confirmees of a Mexican land grant accept the provisions of an act of congress confirming the grant, the title to the confirmed grant, if void prior to the passage of such act of confirmation, becomes valid by virtue of the confirmatory statute.

The effect of the act of confirmation is to establish the title to the eleven leagues therein mentioned from the date of the grant by the Mexican government, and the location of the confirmed eleven leagues having been made, the confirmees hold, not from the United States, but from the prior owner of the soil.

The confirmed land having been identified, pursuant to the provisions of the confirmatory statute, becomes subject to taxation, and cannot in any proper sense be said ever to have been public land.

*Appeal from District Court, Pueblo County.*

THIS was an action in assumpsit, against the appellant, to recover back $2,628.86 paid under protest by the appellees, on the 1st of July, 1874, as taxes for the year 1873. The cause was submitted upon an agreed statement of facts substantially as follows:

On the 1st day of December, A. D. 1843, Governor Manuel Armijo, being then civil and military governor of Mexico, granted to one Gervacio Nolan the following described and bounded tract of land, to-wit: Beginning at a point one and a half leagues below the mouth of the river St. Charles, on the Arkansas, at a monument, No. 1, on the south bank of said river; thence, following the said south bank of the said river Arkansas, upward, to a point five leagues above the junction of the St. Charles with the Arkansas river,

where is placed the second monument; thence, running half-way up the brow of the mountain, where is placed the third monument; thence, following the same brow of the mountain, to a point opposite the first monument, where is placed the fourth monument; thence, to the place of beginning; containing, by estimate, about five hundred thousand acres of land. Which said tract of land, at the time the same was granted, was lying and situate in the province of New Mexico, but is now situate, lying and being in the county of Pueblo and Territory of Colorado.

On, and prior to, the 1st day of May, 1873, the Central Colorado Improvement Company—the appellee—was seized and possessed of all the right, title and interest (if any) in and to the tract of land above described, which were by the making of the grant as aforesaid vested in Gervacio Nolan, the original grantee.

On the 1st day of July, 1870, the Congress of the United States, by an act entitled "An act to confirm the title of the heirs of Gervacio Nolan, deceased, to certain lands in the Territory of Colorado," approved July 1, 1870, upon express conditions confirmed, to a limited extent, the said grant, to wit : To the extent of eleven square leagues, being 48,825 acres. Under and pursuant to the provisions of said act of congress, the plaintiff — appellee — after receiving notice of the completion of the survey of the lands within the exterior boundaries of said grant, did, as required by said act, select and locate in a compact form, and did furnish the surveyor-general of Colorado Territory, with a plat and description, of said selection and location, on the 27th day of April, 1872, subject to the revision of the commissioner of the general land office, and the secretary of the interior.

On the 22d day of May, 1872, Hon. Willis Drummond, then commissioner of the general land office, caused the register and receiver of the land office at Pueblo to give notice to the pre-emption and homestead settlers on the lands within the selected limits of the Nolan grant, to come forward and prove their right to said tracts, within three months from the date of the publication thereof.

Pursuant to said notice, pre-emption and homestead claimants, located within said preliminary selection of eleven leagues, did offer to prove, and did prove, their right to enter, and did enter, 6,565.42 acres, at the land office at Pueblo, in said territory ; that said entries, made as aforesaid under the pre-emption and homestead acts, and pursuant to said act of congress of July 1, 1870, were subsequently approved by said commissioner of the general land office, and by the secretary of the interior.

On the 3d day of December, 1873, the register and receiver of the land office at Pueblo, were officially informed by said commissioner, that it appeared by the records of his office, there had been awarded to pre-emptors and homestead settlers, within said eleven league selection, lands amounting in the aggregate to 6,565 42-100 acres, and that, for that amount, the grant claimants were entitled to indemnity, as provided in the second section of said act of July 1, 1870.

On the 27th of April, 1872, a diagram and descriptive list was filed, of said eleven league selection, but at that time it was impossible to state, and set forth, the exact area of lots and fractional subdivisions bordering on the south side of the Arkansas river, within the said eleven league selection, for the reason that no official survey of the south meanders of the Arkansas river, within the limits of said grant, had at that time been made.

After the official survey of said meanders had been made, and the area of the lots and fractional subdivisions within said eleven league selection were officially ascertained, and designated on the proper township plats, by the surveyor-general, the plaintiff below prepared and filed with the surveyor-general a descriptive list of all the lands within said eleven league selection, showing the accurate areas of said lots and fractional subdivisions, and embracing the same lands and no other, than the identical tract embraced by the diagram filed as aforesaid on the 27th of April, 1872. Said descriptive list is here set forth.

By which said descriptive list, it appeared to the com-

missioner of the general land office, that by reason of the surveyor-general's failure to survey the meanders of the south bank of the Arkansas river, and to designate the area of lots and fractional subdivisions lying within said grant, the plaintiff below had made a preliminary selection and location of 49,741 43-100 acres, being an excess of 916 acres, over and above said eleven square leagues ; therefore, on the 9th day of March, 1874, at the request of said commissioner, the plaintiff below *modified* its said selection, and, on that day, *withdrew* from said eleven league selection, 920 acres, and leaving to the plaintiff below, 48,821 43-100 acres of the said eleven leagues previously selected.

The withdrawal of the said 920 acres by the appellee was approved by the commissioner of the general land office on the 9th of March, 1874.

Said 6,565 42-100 acres allowed to pre-emption and homestead claimants, who had settled upon lands within said eleven league selection of appellee, and within said Nolan grant, prior to July 1, 1870, are then set forth in a descriptive list.

On the 30th of January, 1874, the appellee selected and located upon public lands not mineral, according to the lines of public survey, not exceeding 160 acres in any one tract, and all within the exterior lines of said "Nolan grant," a quantity of land equal to said 6,565 42-100 acres allowed to said pre-emption and homestead claimants. That a descriptive list of said "indemnity" selection (last aforesaid) by appellee, was filed with the surveyor-general of Colorado, and with the commissioner of the general land office. That on the 31st day of March, 1874, the commissioner of the general land office of the United States instructed the surveyor-general of Colorado to prepare such a plat of the selection made by the claimants of the "Nolan grant," as is directed to be made by the fourth section of said act of July 1, 1870.

That on the 31st day of March, 1874, and at divers other times, appellee applied to the surveyor-general of Colorado, for an estimate of the costs of so much of the survey of the

"Nolan grant," as inured, or might inure to the benefit of appellee; that appellee desired, and offered, to pay the amount of such estimate; that said surveyor-general informed appellee, that until all selections, including both the preliminary, eleven square league selection, and the "indemnity" selections located in lieu of the aggregate area of said land awarded to homestead and pre-emption settlers, were formally accepted by said commissioner of the general land office, he, said surveyor-general, could make no estimate of the costs of such survey; that government price for surveying lands where meandering lines of a river had to be run, was greater than for survey of complete subdivisions, where no meanderings are required, and that the government cost of survey could not be determined until after the approval and acceptance of the final selections made by the confirmees of said grant. That by reason of said surveyor-general's failure to furnish said estimate of survey, appellee did not and could not pay the costs of so much of said surveys of said grant as inured or might inure to the heirs of Nolan, deceased, prior to the 1st of May, 1874. That appellee has been legal representative of the heirs of said Gervacio Nolan ever since May 1, 1873, and is sole claimant under said act. Nor did said surveyor-general furnish to appellee, properly approved plats, as evidence of title, required by the fourth section of said act of July 1, 1870, prior to the 1st of May, 1874, or since; nor thence hitherto have the costs of so much of the surveys of said grant as inured or might inure to the benefit of appellee, been paid.

On the 13th of September, 1873, the board of county commissioners of Pueblo county met at the court-house in the city of Pueblo, and, by an order entered of record, fixed the rate of taxation for the year 1873, to wit: " It is ordered that the following rate of taxes be, and are hereby, levied upon all the taxable property in said Pueblo county, for the following purposes, to wit: For county purposes, 7 mills on the dollar; for school purposes, 2 mills on the dollar; for road purposes, 1½ mills on the dollar; for Ter-

ritorial purposes, 1½ mills on the dollar ; poll tax, $2 per poll.''

Under and by virtue of said order of the board of commissioners, the rate of taxation therein mentioned was levied upon all the lands embraced within said preliminary eleven league selection—particularly described by subdivisions and lots hereinbefore — save and except said 6,565 42-100 acres awarded to pre-emption and homestead settlers, and inclusive of said 920 acres withdrawn by the appellee from said eleven league selection.

The total assessed value of the lands of the appellee, upon which said taxes were levied for the year 1873, was $208,539.

On the 1st day of July, 1874, the appellee paid to N. W. Duke, treasurer of Pueblo county, on account of said taxes, $2,628.86, as follows, to wit : County taxes, $1,459.75 ; school taxes, $417.07 ; Territorial taxes, $312.80 ; special road taxes, $148.15 ; interest, claimed to have accrued from January 1, 1874, to July 1, 1874, $291.09.

At the time of making said payment, said treasurer, as such, gave to the appellee his receipt for that amount, in full, for county, school, territorial, and road tax, on the lands therein described, being the identical lands embraced in said preliminary eleven league selection, exclusive of said land awarded to homestead and pre-emption settlers, and exclusive of said 920 acres withdrawn.

That the appellee paid said taxes to said treasurer involuntarily, under protest, and under menace by said treasurer that unless said taxes and interest were promptly paid by the appellee, he, said treasurer, would sell all the lands described in said tax receipt for taxes ; said appellee claiming at the time of making said payment, that said taxes were erroneous and illegal, and were assessed and levied upon the lands described in said tax receipt, when *said property was not subject to taxation.*

Upon this statement of facts the judgment of the court below was for the plaintiff.

Mr. Allen A. Bradford and Messrs. Blake & Whitaker, for the appellant.

Mr. Henry C. Thatcher and Charles E. Gast, for the appellee.

Hallett, C. J.    The question to be determined in this case is, whether the land upon which the tax was levied was, at the date of the levy, the property of the United States, and therefore exempt from taxation.    It appears that a very large tract of land, including that taxed, was, in the year 1843, granted by the Mexican government to Gervacio Nolan, and that our government subsequently acquired dominion of the country in which that tract is located, now a portion of the county of Pueblo.    In the treaty of Guadaloupe Hidalgo (9 Stat. at Large, 929), titles existing under Mexican law were recognized, and it was declared that property of every kind should be inviolably respected.    Under this treaty the title of Nolan to the entire tract, if valid at the time it was created, or subsequently perfected under Mexican law, would be unassailable.    It is, however, contended that the grant was excessive in quantity, the governor of Mexico having authority, under the act of 1824 and the regulations of 1828, to convey eleven leagues only.    U. S. v. Vallejo, 1 Black, 541; U. S. v. Vigil, 13 Wall. 449.    The force of this objection was fully appreciated by the owner of the title, if we may judge from the circumstance that he was unwilling to rely upon his title without the aid of congress.    On the 1st of July, 1870 (16 Stat. at Large, 646), congress confirmed the grant to the extent of eleven leagues, to be located within the bounds of the original grant, deducting therefrom lands occupied by actual settlers, and allowing the grantee to take other lands elsewhere in lieu of those claimed by the settlers.    The Mexican title thus recognized, if invalid before that time, was no longer so, if the grantee or his assignee should accept the provisions of the act, and it appears from the agreed case that this has been done.    Whatever may be said of the title given by the Mex-

ican government, we think that the effect of this act of confirmation is to establish the title to the eleven leagues therein mentioned, from the date of the grant by the Mexican government. The language of the act can only be applied to an existing grant, thus excluding the notion that congress intended to create a new estate. The fact that congress assumed to act in the premises may be cited to show that the general government had some interest in the land, but this may be conceded without abandoning the position assumed.

In *Fremont's Case*, 17 How. 542, a Mexican grant of 10 leagues of land, to be located in a certain district of country, was said to convey a vested interest in the quantity of land mentioned in the grant, although no land was specifically described. So here, congress appears to have acted upon the assumption that the grant to Nolan was good for 11 leagues, to be located within the bounds of the original claim, and this action of congress is not a grant *per se*, but a recognition of a pre-existing right in the grantee, conferred by the Mexican government. Consistently with this theory, it may be maintained that the legal title remains in the general government, until all conditions of the act of congress have been complied with, while the beneficial estate in the land is vested in the citizen, giving to the local government a right to collect taxes assessed upon it. *Witherspoon* v. *Duncan*, 4 Wall. 210.

In this view, the act of congress was necessary not to create the estate, but to attach the grant to a particular tract by prescribing the manner of locating it. It matters not that in certain contingencies, as for instance, if the grantee had refused to accept the provisions of the act of congress, and had failed to maintain, or had abandoned his Mexican title, the land would have reverted to the United States. In a recent case (*U. P. R. Co.* v. *McShane*), the supreme court held that a contingent right in the government to make another grant upon the failure of the first grantee to make sale of the land within a time specified, was not sufficient to exempt the land from taxation. Nor is the

circumstance that all the conditions of the act confirming the grant had not been performed at the time when the tax was levied at all significant as to the right of the Territory to collect revenue from the land. Conceding all these things, the controlling fact remains that before the tax was levied, the land had been identified as the subject of the grant, and it was held by a title which accrued long before the United States could have acquired an interest in it. By confirming the grant congress recognized the title as paramount to that of the general government, and the location having been made, appellee holds not from the United States, but from the prior owner of the soil. The fact that appellee claimed at first too much land, and that a portion was afterward withdrawn upon the suggestion of the commissioner of the general land office, does not materially affect the question. Payment was not made upon the 920 acres withdrawn, and as to the remainder of the location, in view of all the facts, it is impossible to say that it was at the time when the tax was levied, or has ever been public land of the United States. In this feature the case is distinguishable from *Railway Co.* v. *Prescott*, 16 Wall. 603, and *U. P. R. Co.* v. *McShane*, decided at the present term, where a grant was made by the United States upon certain conditions, to be performed by the grantee. Until those conditions were performed, it was thought that no title could pass, and the land remained in the United States, and of course it was exempt from taxation. The case at bar is altogether different, inasmuch as appellee's title is derived from the Mexican government, and not from the United States. *Whitney* v. *Gunderson*, 31 Wis. 359, is more in point, but we are not disposed to follow it. The view here suggested has been fully adopted in California, and appears to rest upon a sound principle. *People* v. *Crockett*, 33 Cal. 150.

The judgment of the district court is reversed, and the cause remanded, with directions to the court below to enter judgment for appellant.

*Reversed.*