72 404
79 401
72 404
80 16
72 404
82 333
72 404
87 150
72 404
88 340
72 404
92 326
92 343
72 404
98 674
72 404
101 18
101 22
72 404
108 315
72 404
114 139
a114 144
72 404
116 611
72 404
124 393
72 404
127 668
72 404
f130 220
130 221
72 404
133 105
72 404
138 127
72 404
142 691
e142 692
72 404
146 361

[No. 8540. In Bank. — May 31, 1887.]

## WILLIAM M. LENT ET AL., RESPONDENTS, v. CHARLES TILLSON, APPELLANT.

STREET IMPROVEMENT — WIDENING DUPONT STREET IN SAN FRANCISCO — CONSTITUTIONAL LAW. — The act of March 23, 1876, providing for the widening of Dupont Street in the city and county of San Francisco, and for the levy of an assessment on the property benefited thereby for the payment of the improvement, is not unconstitutional, either on the ground that it was an attempt by the state to exercise the power of assessment for local improvements within the limits of a municipality, or on the ground that it denies due process of law to the parties affected by the assessment.

ID. — POWER OF LEGISLATURE TO ORDER IMPROVEMENT — OBJECTION TO ASSESSMENT. — The power to determine upon the expediency of a proposed public improvement, or whether the same will be beneficial, rests with the legislature, or such local authorities as have been charged with the duty of determining the policy of the government in those matters. In the determination of such a question, the parties affected by the proposed improvement have no constitutional right to be heard before the assessment is made, and cannot object to the assessment on the ground that the improvement is not beneficial, unless it manifestly appears that the legislature abused its discretion in the matter, or that no such benefit can or could reasonably have been expected to result.

ID. — NOTICE TO PARTIES AFFECTED — SUFFICIENCY OF HOW DETERMINED — DESCRIPTION OF PROPERTY — RIGHT TO HEARING. — The sufficiency of the notices given by the commissioners, as required by the act, of the organization of the board, and that the report of the board is open for inspection, must be determined in the light of all the provisions of the statute. When so interpreted, the notices are not insufficient to constitute due process of law, although they were not addressed to the persons whose property was affected by name, and although the property sought to be taken or affected was not specifically described therein.

ID. — HEARING BEFORE COUNTY COURT — OBJECTIONS TO ACTIONS OF COMMISSIONERS — FINAL ORDER OF COURT. — The opportunity to be heard before the County Court, accorded by the statute to any person interested who felt himself aggrieved by the action or determination of the board, as shown in their report, is sufficient to constitute due process of law. On such hearing, the court was authorized to determine all possible objections made to the report by the parties aggrieved, including any alleged betrayal of their trust by the commissioners, or any objections to the validity of the act, or to the passage of the necessary resolution by the board of supervisors, or to the giving of the required notices by the commissioners, and could by its final order modify the report in any respect so as to adjust the final determinations in regard to the assessments to the report as altered.

ID. — NOTICE OF HEARING BEFORE COUNTY COURT — PARTIES INTERESTED CONCLUDED BY FINAL ORDER. — The notice given by the board of commissioners that the report was open for inspection was a process by which all persons whose rights were affected by the proceedings had before the County Court were brought into court, and was sufficient from that time on to charge them with notice of everything done, and of any step taken therein, and to uphold the final order of the court.

ID. — OBJECTION TO ASSESSMENT — ACTION TO ENJOIN ENFORCEMENT OF — IRREGULARITIES OR FRAUD OF COMMISSIONERS. — Conceding the validity of the statute in question, and that the preliminary steps were taken which authorized the work to be done, an owner of property assessed for the improvement cannot maintain an action to enjoin the enforcement of the assessment on account of mere irregularities or fraud on the part of the commissioners in making the assessments, for which relief could have been obtained in the County Court.

ID. — ACQUIESCENCE IN ASSESSMENT PROCEEDINGS — ESTOPPEL. — The legislature has power to provide that the tacit acquiescence of the parties interested in a street improvement, and their failure to challenge the proceedings therefor while in progress, will estop them from questioning the regularity of the proceedings after they are completed.

NOTICE — PUBLICATION IN SUPPLEMENT OF PAPER. — A statutory requirement that a particular notice shall be published in a newspaper is sufficiently complied with by a publication in a sheet of the paper denominated a "supplement," which is circulated coextensively with the balance of the paper.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*McAllister & Bergin*, and *D. M. Delmas*, for Appellant.

The act of March 3, 1876, was constitutional and valid, and not open to the objection that it does not comply with the requirements of due process of law. In matters of taxation and assessment, the state is not bound to accord personal service of process upon the citizen. (*Parham* v. *Decatur*, 9 Ga. 352; *State* v. *Allen*, 2 McCord, 56; *Harris* v. *Wood*, 6 B. Mon. 643; *Ex parte Randolph*, 2 Brock. 447; *United States* v. *Nourse*, 6 Pet. 472; *United States* v. *Bullock*, 6 Pet. 484; *Davidson* v. *New Orleans*, 96 U. S. 105; *Hagar* v. *Reclamation District*, 111 U. S. 708;

*High* v. *Shoemaker*, 22 Cal. 370; *Loan Association* v. *Topeka*, 20 Wall. 665; *Harper* v. *Richardson*, 22 Cal. 254; *Heidritter* v. *Elizabeth Oilcloth Co.*, 112 U. S. 300; *Taylor* v. *Palmer*, 31 Cal. 666; *Grenada County* v. *Brogden*, 112 U. S. 269; *Secomb* v. *Milwaukee and St. Paul R. R. Co.*, 2 Dill. 474; *People* v. *Smith*, 21 N. Y. 598; *In re Empire City Bank*, 18 N. Y. 216; *Campbell* v. *Evans*, 45 N. Y. 359; *Cook* v. *Gregg*, 46 N. Y. 442; *Happy* v. *Mosher*, 48 N. Y. 317; *In re New York El. R. R. Co.*, 70 N. Y. 357; *San Francisco* v. *Certain Real Estate*, 42 Cal. 512; *Miller* v. *Graham*, 17 Ohio St. 9; *Eitel* v. *Foote*, 39 Cal. 441; *People* v. *Mayor etc.*, 4 N. Y. 441.) The publication of the notices under the act in a supplement of a newspaper was sufficient. (*Davis* v. *Sims*, 4 Bibb, 465; Burroughs on Taxation, 291; *Richardson* v. *Tobin*, 45 Cal. 33; *Haskell* v. *Bartlett*, 34 Cal. 284; *Tully* v. *Bauer*, 52 Cal. 498.) The frauds alleged as invalidating the assessment proceedings are wholly extrinsic to the record, and do not invalidate it. (*Moore* v. *Davenport*, 92 N. Y. 610; *State R. R. Tax Cases*, 92 U. S. 612; *In re Delancey*, 52 N. Y. 82; *Hilton* v. *Fonda*, 86 N. Y. 352; *Ross* v. *Wood*, 70 N. Y. 10; *United States* v. *Throckmorton*, 98 U. S. 65; *New Albany* v. *Burke*, 11 Wall. 107; *Sherman County* v. *Simons*, 109 U. S. 737; *Pana* v. *Bowler*, 107 U. S. 542.) The provision of the act, that the completion of the work should be deemed by the property owners an acceptance of the burdens imposed, was within the power of the legislature to enact, and estops the property owners from questioning the regularity of the assessment proceedings. (*Weber* v. *San Francisco*, 1 Cal. 455; *Patterson* v. *Baumer*, 43 Iowa, 477; *Kellogg* v. *Ely*, 15 Ohio St. 64; *Pittsburg* v. *Scott*, 1 Pa. St. 309; *Wiggin* v. *Mayor*, 9 Paige, 16; *State* v. *Mayor*, 40 N. J. L. 244; *People* v. *Common Council*, 65 Barb. 9; *State* v. *Wertzel*, 62 Wis. 184; *Quinlan* v. *Myers*, 29 Ohio St. 500; *Stevens* v. *Franklin County*, 48 Mo. 167; *Skinner* v. *Hartford Bridge Co.*, 29 Conn. 523; *New Haven* v. *Chatham*, 42 Conn. 465; *Society for Savings* v. *New*

*London,* 29 Conn. 174; *Palmer* v. *Stumph,* 29 Ind. 329; *Commissioners etc.* v. *Silvers,* 22 Ind. 491.) The notices provided by the statute did not have to be directed to the property owners by name. (*In re Mayor,* 99 N. Y. 580; *City of Ottawa* v. *Macy,* 20 Ill. 413.) It was not necessary to describe in the notices the property affected, as the limits of the district were defined by the statute. (Code Civ. Proc., sec. 1898; *In re Mayor,* 99 N. Y. 580.) The notice provided by the statute was not too brief to constitute due process of law. (*People* v. *Mayor of Brooklyn,* 4 N. Y. 419; *Scott* v. *Brackett,* 89 Ind. 413; *Blake* v. *People,* 109 Ill. 505; *City of Ottawa* v. *Macy,* 20 Ill. 413; *Hays* v. *Tippy,* 91 Ind. 102.)

*Garber, Thornton & Bishop,* for Respondents.

The assessment is void because the statute does not provide for due process of law to the tax-payers whose property is assessed. (*Patten* v. *Green,* 13 Cal. 325; *Curran* v. *Shattuck,* 24 Cal. 427; *Mulligan* v. *Smith,* 59 Cal. 206; *Butler* v. *Supervisors,* 26 Mich. 22; *Paul* v. *Detroit,* 32 Mich. 108; *Power's Appeal,* 29 Mich. 504; *Thomas* v. *Gain,* 35 Mich. 164; *Darling* v. *Gunn,* 50 Ill. 424; *Lehrman* v. *Robinson,* 59 Ala. 219; *Lumsden* v. *Milwaukee,* 8 Wis. 248; *Seifert* v. *Brooks,* 34 Ind. 447; *State* v. *Fond du Lac,* 42 Ind. 298; *Stuart* v. *Palmer,* 74 N. Y. 190; *San Mateo* v. *Southern Pac. R. R. Co.,* 13 Fed. Rep. 722.) To constitute due process of law, the notice must be of a hearing at an appointed time, place, and tribunal for the adjudication of the rights and liabilities of the parties sought to be affected by the proceedings. The notice must be of a hearing of the whole case, and should precede the final determination of any essential matter which may conclude the party, and should be personal if practicable. (*State* v. *Road Commissioners,* 41 N. J. L. 89; *Albany City Nat. Bank* v. *Maher,* 20 Blatchf. 341; *Secomb* v. *Milwaukee etc. R. R. Co.,* 2 Dill. 469; *In re Empire City Bank,* 13 N. Y. 216.) The act is unconstitutional because it is

an attempt to exercise the power of assessment for local improvements within the limits of a municipality, directly through agents of its own appointment, and not through the municipal corporation. (*Taylor* v. *Palmer*, 31 Cal. 252; *People* v. *Lynch*, 51 Cal. 34; *Brady* v. *King*, 53 Ind. 44; *Schumacher* v. *Toberman*, 6 Pac. C. L. J. 997; *People* v. *Chicago*, 51 Ill. 17; *Harward* v. *St. Clair Drain Co.*, 51 Ill. 135.) If the various resolutions and notices were sufficient to invest the board with jurisdiction in the premises, still the assessment is void, because it conclusively shows that the cost exceeded the benefits. (*In re Market Street*, 49 Cal. 59; *Creighton* v. *Mauson*, 27 Cal. 624; *Chamberlain* v. *Cleveland*, 34 Ohio St. 561; *Hammett* v. *Philadelphia*, 65 Pa. St. 151; *Tide Water Co.* v. *Carter*, 19 N. J. Eq. 518; *In re Albany Street*, 11 Wend. 148; *State* v. *Mayor*, 37 N. J. L. 381; S. C., 36 N. J. L. 291; *State* v. *Newark*, 37 N. J. L. 415; *State* v. *Road Commissioners*, 41 N. J. L. 83.) The assessment is wholly void, because based upon a rule of valuation so glaringly unjust as to amount to actual fraud upon the tax-payers. (*Tainter* v. *Lucas*, 29 Wis. 375; *Schettler* v. *Fort Howard*, 43 Wis. 48; *Goff* v. *Supervisors etc.*, 43 Wis. 55; *Salscheider* v. *Fort Howard*, 45 Wis. 519; *Clark* v. *Dunkirk*, 12 Hun, 181; *Kennedy* v. *Troy*, 14 Hun, 308; *Langley* v. *Hudson*, 4 Thomp. & C. 353.) The judgment of the County Court constitutes no estoppel precluding collateral attack upon the assessment, nor does the bonds issued under the act estop the tax-payers of the district from contesting the validity of the assessment. (*Starin* v. *Genoa*, 23 N. Y. 440; *Gould* v. *Stirling*, 23 N. Y. 456; *People* v. *Mead*, 24 N. Y. 114; *Horton* v. *Town of Thompson*, 71 N. Y. 513; *Marshall Co.* v. *Cook*, 38 Ill. 51; *Williams* v. *Town of Roberts*, 88 N. Y. 11; *Lippincot* v. *Town of Pana*, 92 N. Y. 24; *Hewit* v. *Board of Education*, 94 N. Y. 538; *Board of Education* v. *Taft*, 7 Ill. App. 571; *Chamberlain* v. *Burlington*, 19 Iowa, 405; *Treadwell* v. *Commissioners*, 11 Ohio St. 183; *Veeder* v. *Lima*, 19 Wis. 298.)

TEMPLE, J.—This suit was brought to enjoin the tax collector of the city and county of San Francisco from selling certain real estate, for the collection of the tax imposed for the payment of the Dupont Street bonds issued under the act of the legislature, approved March 23, 1876. (Stats. 1875–76, p. 433.) That act provided for the widening of Dupont Street, but was not to go into operation until the board of supervisors should declare by resolution or order that in their judgment it was expedient to widen the street, in accordance with and in the mode prescribed by the act.

The act specifically defined the district benefited by the proposed improvement, which should bear the burden of making it, to be assessed to the owners of land in proportion to the benefit received. The district was described as two separate parcels of land, being two strips,—one on either side of the street,—extending from Bush Street to Market. The strip on the east side in width extending half-way to Kearny, and that on the west half way to Stockton,—such streets being the parallel streets nearest to Dupont on the east and west.

In case the board of supervisors expressed their judgment in favor of the improvement, the Dupont Street commissioners named in the act, to wit, the mayor, the auditor, and county surveyor, were to publish a notice in two of the daily papers printed in the city of San Francisco, informing property owners along the line of said street of the organization of the board, "and inviting all persons interested in property sought to be taken, or which would be injured by said widening, to present to the board maps and plans of their respective lots, and a written statement of the nature of their claim or interest in such lots."

The board was required to have an office in the city, and was furnished with a secretary and allowed to employ clerks, attorneys, surveyors, draughtsmen, searchers of records, etc.; and section 7 of the act defines with con-

siderable particularity the duties of the commissioners and the mode of performing them.   It is provided, however, that within thirty days after the publication of the notice of the organization of the board, the owners of a majority in value of the property fronting on the street may interpose their veto to the further prosecution of the work, which veto shall be final.

If the proceeding was not thus arrested, the board was to proceed, and, having completed the work of estimating damages and benefits, was to embody the result in a report, the precise nature of which is minutely defined in the act, and which apparently when so made would give full and particular information of every determination of the board which could affect the interest of any person.

This report when thus completed was to be left " at the office of the board daily during ordinary business hours, for thirty days, for the free inspection of all parties interested, and notice that the same is open for such time and such place," to be published by the board daily for twenty days, in two daily newspapers printed and published in the city.   At any time within this thirty days any person interested, who felt aggrieved by the action of the board, could file in the County Court his petition setting forth his grievance, and the court was empowered to approve the report or to cause the same to be altered or modified, and finally to approve as modified.   When the report was finally approved, the board was to issue bonds of the city and county in a sum sufficient to pay the damages awarded, and all costs, the bonds to be paid by a tax on the district benefited.   When the damages were all paid by the proceeds of the bonds, and the persons receiving the payments had conveyed to the city and county the lands taken, the board was to remove the buildings and widen the street, and it was provided that the completion of the work " shall be deemed an absolute acceptance by the owners of all lands affected by this

act, and by their successors in interest, of the lien created by this act upon the several lots so affected."

The complaint avers that the work was actually performed; that is, that during the first seven months of the year 1877 the street was actually widened from forty-four feet to seventy-four feet, by the removal of the buildings and the turning of the same into roadway and sidewalk; that the bonds were sold, and the money thus obtained was used for the payment of the damages and costs, but it is claimed that money was expended improperly, and a large sum retained without just authority, for costs to accure.

The objections to the proceedings are numerous, but may be included under the following:—

1. The act is unconstitutional;

2. The board of commissioners had no power or jurisdiction to act, because the board of supervisors did not properly express their judgment that it was expedient to widen Dupont Street;

3. The notices required to be given to parties affected were never in fact given as required;

4. The board was guilty of fraud and misconduct; and,

5. The report, as confirmed, shows that the damages exceed the benefits.

1. It is claimed that the act is unconstitutional on many grounds.

First, because it is an attempt by the state to exercise the power of assessment for local improvements within the limits of a municipality. (*People* v. *Lynch*, 51 Cal. 34.) In that case it was said of the statute there under consideration, "Such law is unconstitutional because it is mandatory in its nature, and deprives the board of trustees . . . . of all choice or discretion in reference to improvements."

The act in question does not do that. It leaves the matter entirely to the local legislature to say whether

the work shall be done or not. True, if the board of supervisors concludes to order the work to be done, the act designates the city officers who shall act as commissioners. This power to act as a board is given to such officers and their successors in office. The mode of procedure is also prescribed. There is nothing unusual in this. Nor does it matter that the mode differed from that laid down in the consolidation act for inaugurating other improvements.

But this question is not an open one. (*People* v. *Bartlett*, 67 Cal. 156; *Pacific Bridge Co.* v. *Kirkham*, 64 Cal. 519.)

Second, it is claimed that the act is unconstitutional, because it does not provide for due process of law.

1. It is claimed that the parties to be affected had a right to be heard upon the question whether the street should be widened or not. That the proceeding is judicial in its character is, in fact, a part of the proceeding to take private property for public use, to which the persons whose property is affected must be parties. There was no provision for such hearing.

But it is plain that it is not a judicial act in that sense. It may be said to be judicial in the sense that it is not ministerial. It is an act which rests in the sound discretion of the authority. It may act or not, or may act in such mode as it may deem best within legal limits, but it is not a determination by a judicial tribunal of the rights of parties before it. It is a legislative act, and the power to determine the expediency of a public improvement rests with the legislature, or such local authorities as have been charged with the duty of determining the policy of the government in such matters.

Some authorities from New Jersey are cited to the contrary, but the overwhelming current of decision is in accord with this view. Where compensation is provided for property taken, and persons interested are awarded an opportunity to be heard as to the amount, the consti-

tutional requirement is satisfied.   So, too, where a district is charged with an assessment for a local improvement, it is enough if the parties to bear the burden have a right to be heard as to the assessment before the lien becomes final upon their property.   (*Rec. Dist.* v. *Evans,* 61 Cal. 104; *In the Matter of Zborowski,* 68 N. Y. 88; *Holt* v. *Somerville etc.,* 127 Mass. 408; *Pearson* v. *Zable,* 78 Ky. 170; *Brewster* v. *Syracuse,* 19 N. Y. 116; *People* v. *Smith,* 21 N. Y. 595.)

2.  It is claimed that the act does not provide for due process of law, because the notices prescribed are insufficient.

The notices provided for in the act which are criticised under this head are:—

The notice of the organization of the board; and

The notice that the report of the board is open for inspection.

The sufficiency of the notice will depend, to a very considerable extent, on the nature of the proceeding and the statute on which it is based.   The statute is always presumed to be known, and whether the notice really affords the necessary information and gives the party, whose interests are affected, an opportunity to be heard, must depend largely upon those provisions.

It has been repeatedly held that proceedings for the levy and collection of taxes are not necessarily judicial, and that due process of law as applied to such matters does not require such notice as is considered essential to the validity of a judgment.   In the *Kentucky Railroad Tax Cases,* 115 U. S. 331, it is said: "Notice by statute is generally the only notice given, and that has been held sufficient.   'In judging what is due process of law,' said Justice Bradley in *Davidson* v. *New Orleans,* 96 U. S. 97, 'respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and if found to be suit-

able or admissible in the special case, it will be adjudged to be due process of law; but if found to be arbitrary, oppressive, and unjust, it may be declared to be not due process of law.'"

In other words, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in hand. And further, in matters of assessment and taxation, the same character of notice is not required as in ordinary actions in a court of justice, for the reason, I presume, that in such summary proceedings it is not practicable or usual.

Now, then, what are the circumstances of this case which have a bearing upon this question?

Dupont Street is one of the oldest streets in the city of San Francisco. That portion affected by this proceeding was in the heart of the city, and had long been a finished street, the lots along it on both sides built upon and occupied. The district which it was alleged would be benefited was specifically defined in the act. Kearny Street had shortly before been widened by a proceeding somewhat similar, and the result had been to make the street more attractive. The tendency of business was westward, and Dupont Street was the next parallel street. It was forty-four feet wide. It was not to any considerable extent a thoroughfare except for local purposes. There was not much reason for widening the street, which could interest the general public. But the case comes as near as can be imagined to being one in which it was a certain proposition that the proposed improvement would be greatly to the advantage of the individual property owners. The municipality. and the general public, however, were obviously so little interested in the matter that it would hardly be putting the matter too strongly to say that there was no decent pretext for the improvement except upon the hypothesis that the local property holders desired it, and would be advantaged by it.

It is inconceivable that the matter should be passed through the legislature without being a frequent subject of discussion among the lot-owners, even if it were not done at their instance. They had notice, not only as a rule of law which charges every one with knowledge of the statute, but must have had such information as a fact, and also that in making the improvement the officials were acting, in a certain qualified sense, as their agents, for their individual advantage, rather than for the public.

After the supervisors had resolved that it was expedient that the street should be widened and the board of commissioners was organized, the whole proceeding could even then be stopped by a majority in value of frontage on the street. And when the work should all be completed, the act provides, as already recited, that the completion shall be deemed an acceptance by the lot-owners of the lien of the debt, as an absolute waiver of all claim upon the city for any part of the debt, and as a contract between such owners and the holders of the bonds issued under authority of the act.

Under such circumstances, it seems to me, the notices required are greatly helped out by the act itself. The owners are, in a certain sense, parties to a proceeding, and are informed beforehand of the notices which will or may be given, and of the purpose of them. They are informed minutely of the course of procedure, and the duty, in my opinion, is cast upon them of exercising a certain degree of diligence in regard to them. Having notice that the municipality would assume no part of the burden, and that when completed the entire cost would become a lien upon their property, and the bonds be considered as their individual contracts, they were put to their diligence to see that the board faithfully performed its duties, at least to the extent that they could not afterward complain of mere irregularities or of any misconduct, on the part of the commissioners, which

they could have had reviewed and corrected in the pro-
ceeding itself, *dum fieri*.

This, of course, if correct, does not obviate the neces-
sity of notice, but I think it has an important bearing
upon the issue as to the sufficiency of the notices
provided, and if I am right, it is unnecessary to mention
particularly some objections to the statutory provision
which I may venture to say, in such a view, seem almost
trivial. Some of them, however, cannot justly be so
characterized.

Among these are the objections that the notice is not
required to be addressed to any one, that at the best it is
only for those owning property fronting on Dupont
Street.

As already indicated, the notice must be read in the
light of all the provisions of the act. In *Boorman* v.
*Santa Barbara*, 65 Cal. 313, which is much relied upon
by the respondents, the act authorized the mayor and
common council upon petition to lay out, widen, etc.
*any* street in the city, and directed them to give notice
by publication in a newspaper of the time and place
where they would proceed to examine the property to be
affected. (Stats. 1877–78, p. 777.) This court held the
act unconstitutional, because it did not sufficiently pro-
vide for notice. As it "provides for no notice at all
addressed to any particular person or class of persons
or which would inform any particular person that on
failure of appearance any burden would be imposed upon
him or his property," the court said:—

"It will be observed the act neither fixes the boun-
daries of an assessment district nor authorizes the com-
mon council to fix them. . . . . It is possible, if the
commissioners were authorized to fix the limits of the
assessment district, finally or conditionally, in the first
instance, and then to give notice — even by publication —
to the owners of property within the district, the notice
would be sufficient. But the act provides only for no-

tice, at most, to all property owners in Santa Barbara. Who can know that his property may by the commissioners be deemed to be benefited?"

Plainly, that is not an authority against the sufficiency of the notice here.

The authorities seem to be all, or nearly all, in favor of the proposition that when the limits of the assessment district are defined in the statute, the notice need not be addressed to the persons whose property is affected by name, and certainly in this particular case we see no good reason for such a requirement. (*Mayor, In re Application of*, 99 N. Y. 580; *City of Ottawa* v. *Macy*, 20 Ill. 413.) Nor was it necessary that the property sought to be taken or affected should be specifically described in the notice. As a whole, the property is so described in the statute.

The first notice prescribed in section 6 was, in part, to inform property owners along the line of the street that the board was then organized. The words "property owners along the line of said street," as there used, are not the equivalents of the words "owners of property fronting on said street." For the meaning of the language we must again refer to the statute. There we find the lands to be assessed for benefits described as two narrow strips on either side of the street, each fronting on and along the line of the street.

For one purpose, no doubt, the notice was effective only as to owners of frontage; that is, to set the time running in which the owners of frontage might have stopped the proceedings; for it seems that only such persons could act in the matter. But it was also a notice to all persons interested that the proceedings were then pending, and that the board, unless proceedings were arrested by the veto of the owners of frontage, would proceed with their labors.

3. Various objections are made to the notice prescribed in section 7 of the act. That provision is:—

LXXII. CAL.—27

"Such report, as soon as the same is completed, shall be left at the office of the board daily during ordinary business hours, for thirty days, for the free inspection of all parties interested, and notice that the same is so open for inspection for such time and such place shall be published by said board daily, for twenty days, in two daily newspapers printed and published in said city and county."

This must be construed to require the notice to be published as early as the first day of the thirty days, during which the report was to remain for free inspection. Otherwise, the notice could not truthfully state "the report *is* open for inspection" for such time.

It is said this is insufficient, because the twenty days' publication of notice must come out of the thirty days, which would leave only ten days for the parties to object, which would be an unreasonable period in which to require parties affected to make their objections. The idea that the notice only allows ten days after notice seems to be derived from the practice concerning the service of summons. There the summons, when not personally served, may, under proper conditions, be sometimes served by publication for the two months, or such period as the judge may direct. The law provides that the service shall be complete when the term of publication has expired, and the person served may have a certain number of days after service within which to appear and answer. But evidently that is a mere statutory arrangement, and the service would be just as effectual if the time for answering was made to expire with the publication; provided a reasonable opportunity to be heard was afforded by the notice given. So here it would not matter if the publication were required to continue for the entire period of thirty days. It would be curious if the court should hold that the notice would have been good if it had been published only five days of the thirty, as was very nearly the case in *San Fran-*

*cisco* v. *Certain Real Estate*, 42 Cal. 512, and bad because
it was required to be continued for twenty days.   On
such principles there would have been no notice, though
it were published for a twelvemonth, during all of which
the report was open for inspection and objection.

Of course, unless the notice required can be helped
out by reference to the statute, it would amount to noth-
ing.   It is true, it is not required to be addressed to any
one specially.   It informs no one what property is to be
affected.   It indicates no steps to be taken by the person
aggrieved to obtain redress, and mentions no tribunal
before which, or any time or place at which, his griev-
ance, if he have any, can be heard.

But all this is provided for in the statute.   He has
been already informed that this very notice will be so
published, and of all the steps he will be required to take
to protect himself.   The privilege afforded by the statute
to apply to the court to fix a time for his grievance to be
heard is as beneficial to him as though such time and
place had been fixed by the notice.

The authorities upon all these questions of notice are
exceedingly numerous, and apparently in some respects
conflicting.   Much of this apparent conflict disappears,
however, when we remember that each case must be
judged by its own circumstances, and under the rule I
have cited from the *Kentucky Railroad Tax Cases*, 115
U. S. 331.   All the cases on the subject seem to be re-
ferred to by counsel, but I do not deem it important to
cite or discuss them in this opinion.   I call attention,
however, to the numerous statutes of this and other states
quoted by counsel for appellants, which show that the
mode here adopted is not strange or novel to judicial pro-
ceedings.   It seems to me quite clear that there is no
objection to the act under consideration on the ground
that it fails to provide for due process, so far as the mat-
ter of notice is concerned.

‘ But it is contended, admitting that the notices were

sufficient, no adequate hearing was awarded to the parties whose rights were affected.

So far as the claim that there ought to have been a hearing by the commissioners before the assessment was made is concerned, the point has been settled in this court by the case of *Reclamation District* v. *Evans*, 61 Cal. 104, and by the *Kentucky Railroad Tax Cases, supra,* and in fact, by all the cases upon the subject.

Section 8 of the act provides for a hearing before the County Court.   Any person interested, feeling himself aggrieved by the action or determination of the board, as shown in the report, might at any time during the thirty days that the report was to be kept for inspection, "apply by petition to the County Court, . . . . setting forth his interest in the proceedings had before the board, and his objections thereto, for an order on said board requiring it to file with said court the report of said board, with such other documents or *data* as may be pertinent thereto, in the custody of said board, and used by it in preparing said report.   Said court is hereby authorized and empowered to hear said petition, and shall set the same down for a hearing within ten days from the date of the filing thereof."   It then provides for service upon the members of the commission, that they may answer the petition and appear by counsel in response thereto.   " Testimony may be taken by said court, upon said hearing, and the process of the court may be used to compel the attendance of witnesses and the production of books, or papers, or maps, in the custody of the board or otherwise.   It shall be in the discretion of said court after hearing and considering said application to allow said order or deny the same; and if granted, a copy thereof shall be served on said board, and it shall proceed to obey the same according to the terms of the order to be prescribed by the court. . . . .  The court shall have power to approve and confirm said report or refer the same back to said board, with directions to alter or

modify the same in particulars specified by the court in the order referring the same back."

Now, it is argued that after the person aggrieved has filed his petition, and a day has been fixed for the hearing, and the hearing had, witnesses summoned, books, papers, and maps produced under the process of the court, and counsel heard, and the court is fully advised as to the grievances, all the court can do in the matter is to order the report to be filed, and even this, although affording no relief, is in the discretion of the court.

It is a proposition so often asserted by courts that perhaps now the question should be considered as closed, that the constitution is to be read in connection with laws of this character, and if no hearing is expressly provided by the statute, still if the constitution guarantees it, the statute is to be properly construed so as to allow it if possible, and not to deny it. The constitution and the statute will be construed together as one law. This rule was carried so far in *Neal* v. *Delaware*, 103 U. S. 370, that words denying the right were regarded as stricken out of the state constitution and statutes by the controlling language of the constitution of the United States. (*Kentucky Railroad Tax Cases*, 115 U. S. 334.)

We are not considering here a statute which is silent as to the hearing. The provisions in question were undoubtedly inserted in view of the constitutional requirement, and for the purpose of affording that opportunity to be heard without which the law would be void.

To give the statute the construction contended for would not only defeat the evident purpose, but would make the whole proceeding farcical. And I must confess it seems to me it requires great industry in going wrong, in view of all the circumstances, to conclude that such can be the meaning. Inapt words certainly are found in the section, but it would not have provided so elaborately for a thorough investigation of grievances if it was not intended that redress should be awarded.

The statute has apparently been patched and tinkered after it was first drawn, and incongruous matter injected into the body of it. But it still provides for a full hearing, and that the court may alter and modify. And it seems that such action is to be based upon the hearing provided for. The word "discretion" is used in various meanings, but here evidently it was intended to submit the whole matter to the sound judgment of the court, to be exercised according to the rules of law.

The statute does not expressly authorize the court to pass upon the validity of the act, or whether the board of supervisors had passed the necessary resolution or the notices had been given. But the power to do this is necessarily involved in the power of the court to act at all. It may be that the court could not pass upon these questions upon which its jurisdiction depended, so as to conclude an inquiry even on a collateral attack. It was a constitutional court invested with jurisdiction by the constitution of special cases. The parties had full notice of the proceeding, and of their right to be heard. If to be heard upon such questions was a constitutional right, and the constitution is to be read as a part of the law governing this procedure as the authorities plainly hold, then the law must clearly be held to give the parties that right. In my opinion, however, the right is not doubtful under the statute itself, independent of this proposition.

The statute places no limit upon the objections which might be made by those deeming themselves aggrieved by the action or determination of the board as shown in the report. As all their determinations which could affect any person were required to appear in the report, this would seem to include all possible objections. The determination, for instance, might have been objected to because the act being invalid or the notices not having been given, the board had no right to proceed to act at all. If this contention were sustained, the result would have been that the court would not have confirmed the

report, and the proceedings would have ended without fixing a charge upon the property of plaintiffs. They could have complained that a wrong basis was adopted in estimating damages or benefits; that the estimated cost was too much, or for any misconduct of the commissioners which could affect them, or that the cost exceeded the estimated benefits, and it does not seem to me that the court would have found any difficulty in granting relief.

I do not regard the fact that the commissioners were allowed to answer the petition of the aggrieved party as of any consequence. There was no occasion to require an answer at all. The provision was intended to prevent the matter from going by default, and to enable the commissioners to aid the court by such information as was in their power. This aid did not prevent any person interested from being heard, and if the commissioners betrayed their trust in this matter, that of itself would have constituted a proper subject of complaint which any one might have presented to the court.

The idea evidently was, that there might be many complaints made by persons feeling themselves aggrieved. The court was bound to hear all, and consider all competent and pertinent testimony offered. If any of the alleged grievances were found to be well founded, the report was to be ordered into court. After all complaints had been duly heard and the court duly advised, the final order was to be made declaring what alterations and modifications were necessary. In this order, the court was authorized, not only to grant the specific relief asked for by the petitioners, but also to so modify the report in other respects as to adjust the final determinations in regard to the assessments to the report as altered at the prayer of the petitioners.

I concede at once the proposition that to maintain this final order, it is necessary to hold that all persons whose rights were affected by the proceeding were before

the court; that the notice given under section 7 of the act was a process by which they were brought into court, and from that time on they were charged with notice of everything done and of any step taken in the County Court.

I think this is perhaps the most debatable point in the case, but the difficulty arises to great extent from a disposition to compare the opportunity here afforded with that deemed essential in ordinary judicial proceedings. Measured by that standard, it would unquestionably be deemed insufficient. But that cannot be accepted as furnishing the rule. " Due process of law," says Judge Cooley (Const. Lim., sec. 356), " in each particular case means such an exertion of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

Under a statute which authorized the commissioner of immigration to prevent paupers, criminals, lewd women, and certain others to land, certain women were detained, and on application to this court on a writ of *habeas corpus*, it was adjudged that the act did not violate the requirement of due process. Here there was no hearing provided by the act at all; any woman, if found on a vessel from a foreign port, was *liable* to be deprived of her liberty under circumstances most humiliating and degrading. This court, speaking through Justice McKinstry, said: —

" The peculiar necessities which call for the action of the officer, and whether a power was exercised in the same manner prior to the adoption of the constitution without being regarded a violation of the principles of Magna Charta, may be considered; and if it be found that like proceedings have always been recognized as constitutional in England and this country, and if the person who is subjected to them is accorded every reasonable

opportunity to defend his individual rights which the nature of the case will admit,—the case being one in which the end sought to be obtained is lawful,—a statute cannot be said to deprive a party of the benefits of due process of law." (*Ex parte Ah Fook*, 49 Cal. 406.)

This conclusion was based partly upon the fact that the object of the law could not be attained unless the action under it was prompt and summary, precluding the possibility of according a hearing at an appointed time and place, and although it is not so stated in the opinion, perhaps to some extent because the imprisonment, if it can be said that there was any, was so only in a qualified sense. They were only prevented from entering this state, but were not prevented from going anywhere else.

This is an extreme case, no doubt, but it well illustrates, as all quarantine laws do, the proposition that the constitutional provision will not be given such effect as will render impossible, laws which are generally admitted to be essential to the safety and well-being of society, and that when usage and necessity both sanction it, the opportunity may be so limited as to not render the law inoperative.

The sufficiency of the opportunity to be heard accorded, must be ascertained in each case, not only by considering the adequacy of the opportunity to be heard, but the practicability of a more perfect and satisfactory hearing in the particular case, and if that which is provided is such as the settled maxims of the law permit and sanction in such cases, and is reasonable in view of the necessities of the case, it is enough.

The practice upon this subject, so far as this particular question is concerned, seems to have been uniform. It has never been held, so far as I can find by any case really in point, that a new notice is necessary, or that parties whose individual assessments have not been altered must be brought in and given a right to be

heard as to other changes, no matter how much their individual burdens may be increased by such changes.

The precise question here raised has been often discussed. *Patterson* v. *New York*, 1 Paige, 114, is directly in point. The court said: "The notice to propose objections to the report is a sufficient notice to those who are satisfied with the original report to appear before the commissioners and oppose any alterations which may be proposed by the persons objecting." To the same effect is *The Matter of William and Anthony Street*, 19 Wend. 680.

In *Gilbert* v. *City of New Haven*, 39 Conn. 472, it is said:—

"It is further objected that the defendant had no notice of the recommittal, and of the subsequent proceedings. We are satisfied none was required. The whole matter, from the time of its first reference to the board of compensation to the time the report was finally adopted by the court of common council, is one proceeding; the appellant was notified in the first instance, and appeared. If he neglected to attend the subsequent stages of the proceeding, it affords no ground of complaint now."

*Chamberlain* v. *Cleveland*, 34 Ohio St. 569, was a case very similar to this in the respect under consideration. It was held that after the notice, " all persons interested are bound to take notice of what is done up to the time the equalized assessment is confirmed." (See also *Astor* v. *Mayor*, 62 N. Y. 588; *Murray* v. *Graham*, 6 Paige, 625; *Gates* v. *Brooks*, 59 Iowa, 510; *Avery* v. *East Saginaw*, 44 Mich. 589.)

That is all I deem it necessary to say upon the subject of due process of law.

It is charged also that the act is unconstitutional, because it was not competent for the legislature to determine that the improvement would benefit the property owners, or would benefit them to the extent of the costs

nd damages. While I understand that this point is made by the learned and able counsel for respondents, it s fair to say that they have not much insisted upon the roposition in this form. They really claim that the act lirects the commissioners to ascertain the benefits; that hey did ascertain them, and determined that the bene- its would be less than the estimated cost of the im- rovement. In this, however, it is clear the counsel are n error. The act only requires the commissioners to stimate the benefit which will accrue to each lot rela- ively to the benefits to accrue to other lots. The act ertainly was not constructed upon the idea that the proceedings could be arrested by any possible finding in regard to benefits. Unless its final operation was made to depend upon such a finding, it is difficult to see why there should be one.

Nor, in my judgment, did the commissioners pretend to ascertain the amount of such benefits. The report, as first filed, showed benefits and costs exactly equal, be- ing each estimated at $898,105.

It would have been marvelous if, upon a real estimate of the amounts, they should have come out exactly equal, considering the great number of properties. If, however, they had first ascertained the amount of the costs of the improvement, it would then have been easy to have distributed them proportionately upon the prop- erties benefited. And this is evidently exactly what they did do.

If I rightly apprehend the position of counsel, they seem to think the validity of the law, in the first in- stance, and the jurisdiction of the court or commission which is to conduct the proceeding afterward, will de- pend upon the fact as to whether the property is bene- fited, and this fact must appear affirmatively in order to give validity to the proceeding.

But the power to assess for local benefits is not based upon the fact of local benefit in any other sense than all

taxes are based upon supposed benefit to the tax-payer
The power of taxation is said by Chief Justice Marshal
to be vested in the government by all for the benefit of
all. " The state taxes are based upon the theory that all
are benefited by the government which they are designed
to support. And so of county and municipal taxation
And the legislature may also organize smaller or differ-
ent districts than these usual political subdivisions, and
place upon such districts the burden of taxation for pur-
poses in which the inhabitants have a special interest
or which will specially benefit the property within the
district."

Now, in regard to general taxation, if a case were pre-
sented in which we could plainly see that the tax was not
for the benefit of the government, but was wholly for
the private advantage of an individual, we should not
hesitate to declare that it was not an exercise of legisla-
tive power, and the levy would be held void. The same
rule, and no other, applies to assessments for local im-
provements.

The main practical difference between assessment for
a local improvement and general taxation seems to be,
that in general taxation it is difficult, and generally im-
possible, for the court to say that the purpose of the tax
is not a public purpose, or that no benefit will result to
the tax-payers, while in local assessments it is more often
easy to see that the improvement will not be a special
benefit. Still the benefit is not the source of the power.
That is inherent in the government, and is only limited
by express or implied limitations found in the constitu-
tion, or by its own nature and purposes. Within these
limits the legislature is the sole judge of when and to
what extent the power shall be used.

It may be said that all the cases on this subject are ex-
ceptional, and many of them are cases of great hardship
and clear extortion, in which the local benefit claimed is
only a pretense to cover the unjust exaction, and the

courts have often attempted to find some limitation in the nature of the power which would enable them to prevent the injustice.

Thus it has sometimes been said that the power being based upon the supposed benefit, the burden cannot go beyond the actual benefit, which may be inquired into whenever the attempt is made to enforce the tax; but this, obviously, cannot be so. The legislature must act, after all, in providing for the public good, upon the judgment of its members as to what is expedient or will prove beneficial. The most wisely planned projects often fail to realize the good expected. And then the benefits need not be immediate. I see no just limitation in this respect, except that the tax will not be upheld when the courts *can* plainly see that the legislature has not really exercised this judgment at all, or that manifestly and certainly no such benefit can or could reasonably have been expected to result. The judge should not place his mere opinion against that of the legislature.

So, too, it has been said that as the tax is in this instance imposed by a power *ab extra*, it is taxation without representation. I find no such limitation upon the power in the constitution, though if there were it might be questionable whether in this case there has been a violation of it.

These and some other limitations which courts have attempted to find in the nature of the taxing power, seem to me to be plain attempts to import into the constitution restrictions which cannot be found there by any just reasoning.

Judge Cooley, in his work on Taxation, page 622, says:—

"The power to determine when a special assessment shall be made, and on what basis it shall be apportioned, is wisely confided to the legislature, and could not without the introduction of some new principle in representative government be placed elsewhere. We dismiss this topic, therefore, with the simple remark that with the

wisdom or unwisdom of special assessments when or-
dered in special cases in which they are admissible at
all, the courts have no concern, unless there is plainly
and manifestly such an abuse of power as takes the case
beyond the just limits of legislative discretion."

The power being in the legislature, the limitations
upon it must be found in the constitution either in ex-
press provisions or by implication, and there exists,
which must be recognized by the courts, the same pre-
sumption that the law is within legislative power that
applies to any other statute; that is, the law will not
be declared unconstitutional unless it plainly appears to
be so. Therefore, it is presumed that the power of as-
sessment existed, and the contrary must be very clearly
made to appear before the court could declare the law
invalid. It does not so appear in this case.

But it is contended, admitting that the law is valid,
the board of supervisors did not authorize the work to
be done by expressing their judgment that such improve-
ment would be expedient.

March 27, 1876, the board passed a resolution which
fully satisfies the act. The proceeding was not con-
ducted under the consolidation act. The statute is
complete in itself, and it prescribes no preliminary
notice. It furthermore expressly authorizes the board
to express such judgment in such form as they might
deem advisable. Counsel say this has reference only to
the language in which the judgment should be expressed.

Since the board could not express its judgment at all
without choosing the language, that construction is not
tenable.

It is objected that the notices were not duly published,
because sometimes printed in the supplements. The
supplements, however, in this particular instance, were
part and parcel of the newspaper itself. They consti-
tuted only a third sheet, when there was too much mat-
ter for the usual two-sheet issue. Why they were

designated as supplements I do not know, nor does it matter. The mere fact that the word "supplement" was printed at the head could not change their character. I have looked in vain for any evidence to sustain the finding that the so-called supplement was not circulated coextensively with the balance of the paper. All the evidence upon the subject is the other way.

If I am correct in my conclusions as to this point, the remaining objections do not require much consideration.

That the benefits as shown in the report are less than the cost of the improvement has been already sufficiently noticed. If the intervenors in their cross-complaint have improvidently admitted the construction of the act contended for, it will not help the plaintiffs. It cannot change the meaning of the law, or the legal effect of the finding.

If there was a valid law authorizing the improvement, and the board was authorized to act, and the county court obtained jurisdiction, the plaintiffs cannot complain here of mere irregularities, or bad conduct on the part of the commissioners, for which that court could have afforded relief. The alleged frauds were all such as by the exercise of a proper diligence ought to have been known by the interested parties in time to present to the County Court. This action is by the property owners on the east side of the street; the property taken was immediately opposite. It is averred that the commissioners, willfully and intentionally, determined the value of lots taken to be more than three times as much as they in fact were, and omitted from their estimate of benefits to the same lots about two thirds of the actual benefit. This over-estimate of damages, and under-estimate of benefits, so far as I can judge from the statement of the case in the record, seems to be fully sustained. But the report showed fully what the estimates were, and the injustice was so obvious that a mere inspection by those familiar with the property, as the plaintiffs were,

could not fail to disclose the fact. As to the interest of Bryant, one of the commissioners, I find no evidence of it except the admission in the cross-complaint that he had for seven or eight years owned the undivided half of a certain lot on the northeast corner of Dupont and Morton streets, which fact appeared upon the maps and reports made by the commissioners.

But admitting the validity of the statute, and that the preliminary steps were taken, which authorized the work to be done, the plaintiffs cannot now maintain this action. The statute, as I have already stated, manifested very plainly that the improvement was to be made for their special benefit, and that they were to bear the entire cost. They were afforded an opportunity, even after the board was organized, to arrest proceedings, if a majority in value of frontage should be of opinion that it would not be to their advantage, and were distinctly notified that if they permitted it to be completed, their acquiescence would be deemed an absolute acceptance by them of the lien created by the act. Under such circumstances they could not remain silent, and permit the money obtained of the bond-holders to be expended in the improvement of their property, and then escape liability on the plea that the officers charged with the work, who were in a sense their agents, were guilty of misconduct and fraud, which they by proper diligence could have prevented.

The pleadings and the briefs are full of most positive charges of fraud and corruption against the commissioners, and although apparently hurled at the board, they are constantly put forward as though the bond-holders were in some way responsible for them. They represent themselves as victims who should be relieved at the expense of those who were induced by their former silence to loan the money to improve their property. There was fault and culpability over and above that of the board which is charged with the perpetration of the frauds.

The culpability is on the part of the lot-owners who remained silent while the bond-holders were advancing the money to their agents, and it was being expended by them for their benefit. I see no reason why the legislature might not declare, by a law before the fact, that such remissness shall constitute an estoppel. Certainly under such circumstances a court of equity would not lend its aid to the plaintiffs. Authorities are not wanting on this point, many of them going much further than this court is prepared to go. They fully sustain the proposition, however, that it is competent for the legislature to declare that the tacit acquiescence of parties interested, and their failure to challenge proceedings while in progress, will estop them from questioning them after they are completed, — that they cannot accept the benefits and avoid the burdens.

In *Palmer* v. *Stumph*, 29 Ind. 329, an assessment was laid for the improvement of a street, under a statute which provided for an appeal, but declared that no question or act shall be tried which may arise prior to the making of the contract. The court held that the plain intent was, that the owner should not remain silent until he had secured the full benefit of the work, and then avoid payment. It is said: "If he denies the power of the council to order the improvement, he must test the question by injunction before the work is done. Acquiescence in the action of the council is by law made to estop him from going behind the making of the contract."

The same statute was under consideration, and the same ruling made, in *Commissioners of Allen County* v *Silvers*, 22 Ind. 491. (See also *Quinlan* v. *Myers*, 29 Ohio St. 500; *State* v. *Wetzel*, 62 Wis. 184; *People* v. *Common Council*, 65 Barb. 9; *State* v. *Mayor*, 40 N. J. L. 244; *Kellogg* v. *Ely*, 15 Ohio St. 64; *Pittsburg* v. *Scott*, 1 Pa. St. 309; *Patterson* v. *Baunor*, 43 Iowa, 477; *Weber* v. *City of San Francisco*, 1 Cal 455.) I think the cause should be

LXXII. CAL.—28

remanded, with directions to dissolve the injunction and dismiss the complaint.

So ordered.

THORNTON, J., McFARLAND, J., and SEARLS, C. J., concurred.

McKINSTRY, J., concurring.—I concur in the order or judgment directing the court below to dismiss the complaint.

1. If there were irregularities in the proceedings to widen Dupont Street, which did not deprive the plaintiffs of opportunities to contest them, they should have been objected to in the course of the proceedings. If the statute is a valid statute, but it appears from the record that there were omissions, defects, or departures from the procedure prescribed by the statute, which render the assessment of the commissioners, or judgment of the County Court invalid,—for want of jurisdiction of the persons or property of the plaintiffs,—each of the plaintiffs had a plain, speedy, and adequate remedy at law, by means of the writ of *certiorari*. (*Ewing* v. *City of St. Louis,* 5 Wall. 413; *S. V. W. Co.* v. *Bryant,* 52 Cal. 132; *People* v. *El Dorado,* 8 Cal. 61; *People* v. *Board of Delegates,* 14 Cal. 479.)

2. And so if the assessment or judgment is void because of the invalidity of the statute, each of the plaintiffs could have resorted to *certiorari*. Moreover, if the act of March 13, 1876, is unconstitutional and void,—as contended by counsel for respondents,—a sale of the lands assessed, and the tax collector's deeds thereof, would constitute no cloud on the title of the plaintiffs. An injunction will not be issued to restrain the collection of a tax or assessment by the sale of real property, unless it appears that the plaintiff would suffer irreparable injury, or an injunction is necessary to prevent a multiplicity of suits, or the sale would cast a cloud on his title. (*Dean*

v. *Davis*, 51 Cal. 407; *Houghton* v. *Austin*, 47 Cal. 647; *Savings and Loan Society* v. *Austin*, 46 Cal. 448; *Wiggin* v. *Mayor*, 9 Paige, 23; *Dows* v. *City of Chicago*, 11 Wall. 104; *C. P. R. Co.* v. *Corcoran*, 48 Cal. 65.) When a statute gives to a tax-deed—the tax being levied by a valid law—effect as evidence. *prima facie* of the regularity of the assessment, and of all proceedings under it, the deed may create a cloud. (*Palmer* v. *Boling*, 8 Cal. 384; *Bucknall* v. *Story*, 36 Cal. 73; *Patten* v. *Green*, 13 Cal. 328; *High* v. *Shoemaker*, 22 Cal. 372; *People* v. *Crockett*, 33 Cal. 157.) But whatever effect the legislature may attempt to give to a tax or assessment deed as evidence, every such deed must be read with the statute under which it purports to have been issued, and if the statute is void, the deed issued under it can cast no cloud on the true title.

3. At a very early day in the judicial history of this state it was held, where an assessment was laid for improving a street, thereby benefiting the property of the plaintiff in common with the property of other persons, and the improvement was completed without the plaintiff's interposing to prevent it, an injunction to prevent the sale for the assessment was properly denied on the ground that he who seeks equity must do equity; and that the city should be permitted to proceed and sell the plaintiff's land, leaving him after the sale to the technical rights which he set up in his bill. (*Weber* v. *City of San Francisco*, 1 Cal. 455.) I know of no case in which the doctrine of that case has been expressly overruled, or overruled by necessary implication. And while there is some conflict in the decisions of the courts of the several states with reference to the conditions under which equity will interpose to enjoin the sale of lands for assessments, there is ample authority to uphold the view taken by the Supreme Court of this state in *Webber* v. *San Francisco*. "One of the first of these [equitable principles] is, that parties coming into equity must do equity. . . . . If parties cannot come into equity without

submitting to do equity, a fortiori they cannot come for
the summary interference of the court when their con-
duct before coming has been such as to prevent equity
from being done." (Per Turner, L. J., West R'y v. Ox-
ford, 3 De Gex, M. & G. 359.)  Here the plaintiffs with
full knowledge of what was done by the officers and
others under color of the statute,—for the contrary is
not alleged, found, or proved,—with full knowledge of
all the acts of which they now complain as wrongful and
unlawful, remained quiescent until they had received
the benefits of the work.  The legislature had declared
that their lands would be benefited, and there is nothing
in the record to indicate that their lands were not, in
fact, benefited to the full amount for which they have
been or will be assessed.  When the complaint was filed,
valuable buildings belonging to many different persons
may have been removed or destroyed, and the work of
widening the street had been completed at very great
expense.  So far as appears, while great loss and injury
to others would be the consequence of an injunction
herein, the plaintiffs will suffer no real injury by a de-
nial of an injunction.  Under these circumstances, I
think it clear that the plaintiffs so far acquiesced in the
work of widening the street and the issue of the bonds
as that they should have been denied an injunction
decree.  (Lux v. Haggin, 69 Cal. 255, and cases there
cited.)

Where the county commissioners contracted for the
building of a bridge without legal authority, and the
bridge was completed, it was adjudged that payment for
it could not be enjoined at the suit of a tax-payer.
(Clark v. Dayton, 6 Neb. 193.)  When an improvement
had been made along a public street, to which the owner
of property abutting thereon had made no objection until
after its completion, upon a bill being filed by him to en-
join the assessment for want of notice, it was held he
must do equity by paying the amount which his property

was benefited. (*Barker* v. *Omaha,* 16 Neb. 269.) In Indiana the doctrine has been carried further, and it is settled that a property owner cannot quietly permit money to be expended in a work which benefits his land under a contract with a city, and then deny the power of the city to make the contract. (*Palmer* v. *Stumph,* 29 Ind. 329; *Hellen Hamp* v. *La Fayette,* 30 Ind. 194; *City of La Fayette* v. *Fowler,* 34 Ind. 140.)

4. It may be urged, however, that equity should entertain jurisdiction of a suit like the present "to prevent multiplicity of actions." The multiplicity of actions, which, it may be said (although in the absence of averment) the complainants here seek to avoid, would not injuriously affect any one of them. (Cooley on Taxation, 2d ed., 771; *Dodd* v. *Hartford,* 25 Conn. 232.) But if that be not the true rule, and a bill may be filed by many persons to enjoin sales of the separate property of each for the same assessment, if the only necessary community of interest among the plaintiffs is in the questions at issue to be decided by the court,—"in the mere external fact that all their remedial rights arose at the same time, are of the same kind, involve similar questions of fact, and depend upon the same questions of law" (1 Pomeroy's Eq. Jur., sec. 260),—the question still remains: Will a suit be entertained to prevent multiplicity, when it appears that no one of the plaintiffs could separately demand equitable relief? The cases sometimes supposed to do so, do not, when examined, answer the foregoing question in the affirmative. *Kennedy* v. *City of Troy,* 14 Hun, 308, and *Clark* v. *Village of Dunkirk,* 12 Hun, 181, were cases in which it was held that, when an assessment is invalid, but such invalidity is shown only by matters *dehors* the record, which in itself is in all respects regular and within the power and jurisdiction of the authority laying the same, an action in equity may be maintained by any one, upon whose real estate an apparent lien has been created by the assessment on behalf of

himself *and others in like situation;* but to justify such an action, it must be alleged in the complaint that the assessment is regular upon its face, and apparently in accordance with the provisions of the law authorizing it.    In *Ireland* v. *City of Rochester,* 51 Barb. 435, the Supreme Court said: " The assessment being void as to the plaintiffs, their right to maintain this action is clear, not only to avoid a multiplicity of suits, but to remove a cloud from their respective titles." (Citing 14 N. Y. 534.) The case referred to is *Heywood* v. *City of Buffalo,* 14 N. Y. 534.   That was a suit by a single plaintiff, and the decision was: When an action was brought to restrain the collection of and annul an alleged illegal assessment, which, if legal, was a lien on the plaintiff's real estate, but the complaint did not show but that its invalidity appeared on the (face of the) proceedings imposing it, on demurrer to the complaint, held the action could not be maintained.   And in *Scofield* v. *Lansing,* 17 Mich. 439, the Supreme Court of Michigan held that when, by the provisions of a city charter, a tax was declared to be a lien on premises, it constituted a cloud on title.   In these cases, each of the plaintiffs could have claimed separately (as was held by the courts of New York and Michigan) the aid of equity to remove a cloud from his title, as well as have maintained his action or defense at law.   In some of them the plaintiffs were permitted to join as plaintiffs in an equitable suit, because the title to their respective tracts of land was affected by the same cloud, created by the same proceedings.

Even if there are cases in which each of the several plaintiffs would not be allowed to maintain a separate suit in equity, but yet all would be entitled to unite in one suit for the determination of questions which might arise in separate actions at law, the result herein must be the same.   The plaintiffs by their acquiescence and consent, having lost their right to ask the aid of equity by injunction, the court ought not to have granted to all that

which it should refuse to each. To grant the injunction to all, because each may be subjected to a separate action at law, is to reward the laches and neglect which has deprived each of his right to seek the equitable relief. The acquiescence which estops the plaintiff from obtaining an injunction is in the nature of a defense in equity, and by holding all estopped by such acquiescence, it is not necessarily held that the plaintiffs were improperly united as plaintiffs, whether they were united to prevent multiplicity of actions or for any other reason. It is simply to say that none of the plaintiffs are entitled to the preventive decree.

PATERSON, J., dissenting. — I think the judgment should be affirmed. I assent to some of the propositions advanced in the leading opinion, but the statute and proceedings in controversy are in many respects, it seems to me, plainly violative of that clause in the constitutional declaration of rights which says: "No person shall be deprived of . . . . property without due process of law."

1. That the act itself should provide for "due notice" to the property owner, and afford him an opportunity to be heard, is settled beyond all controversy, and whatever may be the conflict of opinion upon the question of what is "due notice," there can be no question that it should be notice of a full hearing as to time, place, and liability. Section 7 is the only provision which assumes to satisfy this requisite, but it provides no notice at all. It affords no notice of a hearing, and none was given. It provides for a notice after assessment is complete, that the report "is open for inspection." It is true section 8 attempts to give any person dissatisfied with the report a hearing upon petition before the County Court,—which court could not, under sections 6 and 8, article 6, of the old constitution, be clothed with jurisdiction of any case involving the title or possession of real property, — but it

is only by implication, if at all, that the court could aid him, the language of the statute being, "It shall be in the discretion of the court, after hearing and considering said application, to *allow* or *deny* the same."

As to those, however, who were satisfied with the report, which had been left "open for inspection," there is no hearing provided, although the court is given in such cases absolute power to fix values and assess damages of its own motion and according to its own rules and estimates, — notwithstanding the report of the commissioners, with which the owner may be content. The following is the concluding portion of section 8: —

"But in case no such petition shall be filed with said County Court within the time above limited for the filing thereof, the said report shall be presented by the said board to the said County Court, with a petition to the court that the same be approved and confirmed by the court. The court shall have power to approve and confirm said report, or refer the same back to said board, with directions to alter or modify the same in the particulars specified by the court in the order referring the same back, and thereupon the said board shall proceed to make the alterations and modifications specified in the order of said court. The alterations and modifications aforesaid being made, the report shall be again submitted to the said court, and if the court, upon examination, shall find that the alterations and modifications have been made according to the directions contained in said order, the said court shall approve and confirm the same by an order to be entered on its minutes; but if the said board shall have neglected or failed to make the alterations and modifications set forth in the order of reference, the court may again refer the report back to said board, and so on until its original order of alteration and modification shall have been complied with by said board, and the said court shall then approve and confirm said report." (Stats. 1875–76, p. 436, sec. 8.)

Of course, if we can say that the citizens of the state are charged with notice of all the acts of the legislature affecting their private interests, and must be on the alert to prevent fraud in the carrying out of the work provided for, the objection just considered is not well taken, but that would be equivalent to saying that "notice" and "opportunity to be heard" are not essential elements of "due process of law."

2. We might be able to overlook the defects referred to if it were clear that the parties whose property was affected had, as matter of fact, due notice and substantial hearing; but as I read the record, such is not the case here.   Many of the orders seem to have been made *nunc pro tunc* in regard to the time for hearing.   Several of the petitions were set for hearing on December 8th.   On that day no orders were made, nothing was done until December 15th, when they were continued to December 18th.   On December 19th the whole matter was continued to and set for hearing December 22d.   Thereafter *and without further notice or opportunity to appear*, the court, on an *ex parte* motion, took up the case, and finally disposed of the matters before it, two days before the day set for regular hearing.   These interesting, if not suspicious, facts appear on the face of the court's records, and in ordinary cases would not support a judgment.   (*Tompkins* v. *Clackamas*, 11 Or. 364.)

3. The report and judgment show that the assessment was for about one hundred thousand dollars in excess of the benefits.   If I understand the authorities on this proposition, a statute which imposes an assessment in excess of special benefits is unconstitutional.   (*Davidson* v. *W. O.*, 34 La. Ann. 170; *Taylor* v. *Palmer*, 31 Cal. 254; *Creighton* v. *Mason*, 27 Cal. 624; *In re Market Street*, 49 Cal. 549; *Chicago* v. *Larned*, 34 Ill. 303.)

It may be admitted that the legislature had the power to declare the benefit, but I fail to find any declaration of that kind in the act referred to.   It is true, the act

speaks of "the district hereinafter described as benefited by said widening," but there is no direct finding of the fact of benefit therein by the legislature; on the contrary, the board of commissioners are therein directed to ascertain and fix the extent of damages and benefits "according to the judgment of the board." (Section 7.)

4. The bond-holders stand in no better position than the municipal authorities. The bonds are not general or ordinary municipal bonds issued for the benefit of the general fund. They are payable out of a special fund raised by special tax on a small district. They do not show on their face that the act has been complied with, which is essential even if the act referred to be valid, and consequently they are not negotiable so as to cut off the defenses claimed. (*Carroll Co.* v. *Smith*, 18 Rep. 33; *Williams* v. *Roberts*, 88 Ill. 11; *Cagwin* v. *Hancock*, 84 N. Y. 532; *Craig* v. *Town of Andes*, 93 N. Y. 405; *Town of Lyons* v. *Chamberlain*, 89 N. Y. 585.)

Rehearing denied.